THE PEOPLE *ex rel.* The Attorney General

*v.*

THE KANKAKEE RIVER IMPROVEMENT COMPANY.

*Filed at Ottawa June 21, 1882.*

1. KANKAKEE RIVER IMPROVEMENT COMPANY—*of the duty to file with the Auditor sworn statements of the amount expended in improvements—effect of the act of 1865 in respect to such a requirement in the original charter.* Section 7 of the original charter of the "Kankakee and Iroquois Navigation and Manufacturing Company," passed in 1847, (of which company the "Kankakee River Improvement Company" is the successor,) reserved to the State the right to resume the control of the improvements authorized by the charter, at any time after twenty years, by paying to the company, or to the stockholders thereof, the cost of said improvements, with six per cent interest thereon per annum. The same section required the company to keep a true and accurate account of all expenditures made in respect to such improvements, and to file a copy of the same in the Auditor's office of this State, on or before the first Monday of January in each year, attested by the oath of the president of such company. In 1865 a supplementary act was passed, by the 5th section of which it was provided that the rights of property of the company should in no way thereafter be abridged or impaired, or affected by any prior legislation. This, it is held, operated to repeal that portion of the original charter which reserved to the State the right to resume the control of the improvements. The keeping and filing of accounts of the expenses of the improvements was merely incidental and subservient to the object of purchase by the State, that there might be means at hand of knowing the cost of the work, and which might be of aid and assistance in the exercise of the option to purchase. But the right of purchase having been relinquished by the State, then its incident, the keeping and filing of these accounts, followed it, and was no longer in force after the act of 1865. So the omission after that time to keep and file such accounts was no ground of forfeiture of the franchise of the company.

2. SAME—*of the character of the franchise conferred, as respects its entirety—and of the option to omit to do any part of the work proposed.* The original charter of the Kankakee and Iroquois Navigation and Manufacturing Company gave to that company power to improve the navigation of the Kankakee and Iroquois rivers from points mentioned, up the streams to the Indiana State line, "and also from and to any points on said streams intermediate the extremes hereinbefore mentioned." It was an integral work of the improvement of the navigation of the two rivers which the act contemplated, and it admitted no idea of separability, or of optional privilege on the part of the company in respect to the making or omission to make

the proposed improvement upon any particular parts of the streams within the designated limits.

3.   The 6th section of the act of February 16, 1865, amendatory of the original charter, directed the company "to lock and slack-water the Kankakee river from Kankakee City to the east line of the State of Illinois, within eight years from the passage of this act, with works sufficient to pass canal boats of the size of line boats on the Illinois and Michigan Canal." Prior to the act of 1865 there was no time prescribed within which this or any other part of the improvement was required to be completed. It was *held*, this 6th section was not to be construed as merely a limitation in point of *time*, upon the further enjoyment of a supposed option, as applicable to the particular portion of the work therein specified, such option going to the extent, as was contended, of relieving the company of any obligation to make the improvement at all, but was to be understood as a positive requirement, such as was embraced in the original charter, that the work should be done, and in respect to this particular portion that it should be done within the time limited. The requirement became an express condition annexed to the grant of the entire franchise conferred, which the company must have performed to entitle it to a continuance of its franchise. A non-compliance with the requirement would be *per se* a misuser, and a cause of forfeiture of the franchise as for condition broken.

4.   Moreover, the franchise was entire in its character, embracing the whole improvement as contemplated in the original charter. It was not divisible so as to admit of a forfeiture as to a part and non-forfeiture as to the residue. An abuse in a particular department of an entire franchise is cause of forfeiture of the whole franchise.

5.   SAME—*abuse of franchise—as to the exercise of a discretion whether there shall be a judgment of ouster, or only a fine imposed.* In case of an abuse of a franchise conferred upon a corporation, the statute gives to the court a discretionary power, instead of entering a judgment of ouster from the franchise, unless the court should be of opinion that the public good demands such judgment, to merely assess a fine. Where the omission of duty is of minor importance, the alternative of a fine may properly be considered, but when the non-performance is of a thing which is of the essence of the contract,—going to the object of the incorporation,—not doing the very thing the performance of which was the purpose and object for which the corporation was created, then the State may well resume the control of the subject involved, by a judgment of ouster.

6.   So in the case of the Kankakee River Improvement Company, in its omission to comply with the requirement "to lock and slack-water the Kankakee river from Kankakee City to the east line of the State," there was a neglect to do that which was so essential to the accomplishment of the enterprise contemplated by the charter, that the public good required the State should resume the corporate franchise.

7. STATE AID *for improvement of rivers— constitutional inhibition as to railroads and canals.* It was objected to the resumption by the State of the franchise granted for the improvement of the navigation of the Kankakee and Iroquois rivers, as for a misuser, that work which had already been done in furtherance of the project would fall into decay and ruin, from inability of the State to make repairs and keep it up, because of the provision of the constitution of 1870 that "the General Assembly shall never loan the credit of the State, or make appropriations from the treasury thereof, in aid of railroads or canals." It was *held,* this provision did not apply. It does not respect rivers,—and a river does not become a canal from having its navigation improved by artificial means.

8. LESSEE OF A FRANCHISE *in part—effect of acts of forfeiture as to other parts.* Where a private corporation holds a franchise which is entire in its character, as, to improve the navigation of a river between certain designated points, but with the power to lease a portion of the works, a lessee of such portion will hold subject to the risk of forfeiture of the entire franchise if his lessor should be guilty of default in respect to the improvement of any other portion of the stream. The lessee in such case would take as in case of any other conditional estate, subject to the condition, and with the liability to forfeiture for breach of the condition.

9. CORPORATION—*amendment of charter—how far binding.* Where an amendment of the charter of a private corporation, limiting the time within which a duty already enjoined is to be performed, is accepted by the company, such additional requirement becomes an express condition to the grant of the franchise conferred, which the company must perform to entitle it to a continuance of its franchise. The non-compliance with the requirement will be regarded as *per se* a misuser, and a cause of forfeiture of the franchise as for condition broken.

10. QUO WARRANTO—PLEADING—*requisites of the information—replication.* An information in the nature of a *quo warranto* against a corporation, for a forfeiture of its franchises, may charge it generally with usurpation, without setting out the causes of forfeiture; and on defendant setting forth the act of incorporation, and justifying under it, the Attorney General may reply the cause of forfeiture generally. Where the plea admits the facts which are relied upon as causes of forfeiture, and justifying, etc., that will dispense with the necessity of a replication showing them, and a demurrer to the plea will present the whole merits of the case.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

By direction of a joint resolution passed by the General Assembly in 1881, the Attorney.General of the State filed an information in the nature of a *quo warranto* against the

Kankakee River Improvement Company, alleging that said company, without any warrant, was exercising the power of controlling the navigation of the Kankakee and Iroquois rivers, collecting tolls for the navigation thereof, and of leasing the water powers upon said rivers, and collecting rents therefor, etc., and requiring the company to show cause by what warrant it claimed to exercise such powers. The company filed its plea, alleging the passage of an act by the General Assembly, February 15, 1847, providing for the incorporation of the Kankakee and Iroquois Navigation Company. (Private Laws, 1847, p. 91.)

The first section of the act, describing the purposes and objects of the company, is as follows: "The purposes and objects of said company shall be the improvement of the navigation of the Kankakee and Iroquois rivers, the creation of water power on said streams, and the building and erecting mills and machinery of all kinds on and near said streams, all which improvements and erections are to be made in the way deemed best for the public good by said company. The said company shall have power to improve, as aforesaid, the navigation of said streams, from the point on said Kankakee river which is intersected by the Kankakee feeder for the Illinois and Michigan Canal, up the said river to the Indiana State line, and from the mouth of said Iroquois river up the same to the Indiana State line, and also from and to any points on said streams intermediate the extremes herein-before mentioned. The first improvement, however, to be made in the navigation of said streams shall be to perfect the navigation of the Kankakee river from the said feeder to the town of Wilmington, on said last named river."

The corporation, the plea alleges, was organized at some time during the same year, 1847, but nothing was done for some fourteen years afterwards; that at length one Hiram O. Alden acquired control of the stock of the corporation, and in 1861 operations were commenced to create slack-water navi-

gation from Wilmington to the feeder, and that a channel was constructed one hundred feet in width, from the feeder to Wilmington, of the proper depth, and said channel was opened to public navigation in 1861 and 1862.  The work done by him, however, proved ·to be insufficient, and the dam upon which it depended was swept away by a freshet a few years afterwards; that in 1870, (the charter ·having been amended in 1865, so as to enable the company to offer the needful attractions and securities to obtain credit,) the work was undertaken upon a much more durable and expensive scale by a company of persons from the east, and costly locks and dams of solid masonry and other auxiliary structures of the most complete kind were built, and in the end a sum total of more than half a million of dollars was expended on the improvement.  Continuous and navigable slack-water was perfected for a distance of about twenty-one miles, including the feeder,—that is, from Wilmington to the Illinois and Michigan Canal, about nine miles, and to a point above Wilmington, about twelve miles,—four dams and four locks having been built above the State dam, dam No. 4 being at Wilmington; that a large water power was incidentally created at Wilmington, a portion of which has been disposed of, and is of use.  But in 1873 the company became embarrassed, was forced to discontinue its operations, and was finally reduced to a condition of irretrievable insolvency.  In 1877, by due proceedings for that purpose, certain trust deeds, which had been executed in 1870 and 1871, to secure a loan of $600,000, conveying the franchise, as well as the improvement, and certain real estate of the company, were foreclosed, and the mortgaged property sold.  In 1879 the improvement and franchise were bid in by one E. P. Carpenter, for himself and associates, and they, soon after, took the necessary steps under the general law to form a new corporation, styled the "Kankakee River Improvement Company," the defendant to this information.

The plea sets out at length the charter, and the several amendatory and supplementary acts thereto, and a full history of the enterprise. The plea disclaims as to so much of the franchise as relates to the Kankakee river from the head of the level produced by the upper dam eastwardly to the State line, and confesses the information in reference thereto. The circuit court overruled a demurrer to the plea, and gave judgment in favor of the defendant, dismissing the information.

Mr. JAMES McCARTNEY, Attorney General, for the People, made the following among many other points:

Legislative grants of a franchise giving exclusive privileges are to be construed most strongly in favor of the State. Nothing is to be taken as conceded but what is given in unmistakable terms, or by implication equally clear. *Mills et al.* v. *County of St. Clair et al.* 2 Gilm. 197; *Northwestern Fertilizing Co.* v. *Hyde Park*, 70 Ill. 634; *Fertilizing Co.* v. *Hyde Park*, 7 Otto, 659; *R. and G. R. R. Co.* v. *Reid*, 64 N. C. 155; *State* v. *Krebs et al.* id. 604; *McAden* v. *Jenkins*, id. 796; *Sprague* v. *Birdsall*, 2 Cow. 419; *Rathbun* v. *Acker*, 18 Barb. 393; *Doe ex dem.* v. *G. R. R. and B. Co.* 15 Kelly, 524; *Mayor* v. *M. and W. R. R. Co.* 7 Ga. 221; *Home of the Friendless* v. *Rouse*, 8 Wall. 430; *Camden and Amboy R. R. Co.* v. *Briggs*, 22 N. J. 623; *Commonwealth* v. *Erie and Northeastern R. R. Co.* 27 Pa. St. 339.

A grant of corporate privileges to a body of men, when accepted, is a contract between the State and the corporators, and the grant may be resumed by the State for non-performance of the contract or misuser of the franchise. *Erie and Northeastern R. R. Co.* v. *Casey*, 26 Pa. St. 287; *Attorney General* v. *Petersburg and Roanoke R. R. Co.* 6 Ired. 456.

The law of 1865, by no known rules of construction, can be held to repeal any part of the act of 1869. Our own decisions have always been adverse to repeals by implication.

*Fowler* v. *Perkins*, 77 Ill. 271; *Bruce* v. *Schuyler et al.* 4 Gilm. 221; *Hume et al.* v. *Gossett*, 43 Ill. 297; *People ex rel.* v. *Brayton*, 94 id. 341.

From these authorities it follows that the act of 1865 did not repeal that part of the act of 1847 which required the company to make annual statements of the cost of the improvement to the Auditor of Public Accounts, and the plea impliedly admits that this duty has not been performed.

A corporation must come up to the substantial objects for which it was created and endowed, and if it fails to do so, it is a breach of trust. Even an inability through misfortune to answer the design of its creation, is also cause of forfeiture. *People* v. *Bristol and Renssellaerville Turnpike Co.* 23 Wend. 222; *Kentucky River Navigation Co.* v. *Commonwealth*, 13 Bush, 435; *London City* v. *Vanacre*, 1 Ld. Raym. 496.

That the franchise of a corporation may be declared forfeited for a misuser or a non-user, see *Terrett et al.* v. *Taylor et al.* 9 Cranch, 43; Angell & Ames on Corporations, sec. 776; Field on Corporations, sec. 455; Potter's Law of Corporations, sec. 670; *Chesapeake and Ohio Canal Co.* v. *Baltimore and Ohio R. R. Co.* 4 Gill & J. 1; *People ex rel.* v. *Kingstown and Middleton Turnpike Co.* 22 Wend. 193; *Thompson* v. *People*, 23 id. 537; *People* v. *Fishkill and Beekman Plank Road Co.* 27 Barb. 445; *People* v. *Phœnix Bank*, 24 Wend. 431; *Lumbard* v. *Stearns*, 4 Cush. 60; *State* v. *Real Estate Bank*, 5 Ark. 595.

Mr. G. D. A. PARKS, for the appellee, made the following among other points:

It is a universal maxim that forfeitures are not favorite objects of the law, and private corporations, even in proceedings of this kind, are not excluded from the benefit of that maxim. High on Extraordinary Remedies, sec. 649; *Voris* v. *Renshaw*, 49 Ill. 426; *Hartford Fire Ins. Co.* v. *Walsh*, 54 id. 168; *Thompson* v. *People*, 23 Wend. 585.

Legislative grants, including charters of incorporation, while never construed unfavorably to the State in really doubtful cases, are nevertheless to be interpreted like all instruments, reasonably and fairly, so as to carry out the manifest intent of the parties. To ascertain this, the history of the act and the circumstances attending its origin may be consulted. *Edwards* v. *Pope*, 3 Scam. 465; *Mills* v. *St. Clair*, 2 Gilm. 227; *Newhall* v. *Galena and Chicago R. R. Co.* 14 Ill. 275; *Belleville R. R. Co.* v. *Gregory*, 15 id. 22; *Richmond R. R. Co.* v. *Louisa R. R. Co.* 13 How. 71; Potter's Dwarris on Statutes, 175; *Charles River Bridge* v. *Warren*, 11 Pet. 589.

The requirement in the 7th section of the original charter directing the corporation to file annual accounts, having been repealed, or if not repealed having become inoperative and obsolete by force of the constitution of 1870, can now furnish no ground of forfeiture.

The sole object of the provision in question was as ancillary to the immediately preceding provision in the same section, reserving to the State the right to purchase the improvement after twenty years from the date of organization, and take it under governmental control. But regardless of the effect to be given to the act of 1865, the constitution of 1870 deprived the legislature of the power to purchase the improvement. Const. 1870, art. "Canal."

The franchise conferred was not a unit, or entirely for the whole extent of both rivers to the State line. While the company was granted the privilege of making the improvement from extreme to extreme, it also was allowed the option to abridge the extent of its undertaking "from and to any points on said streams intermediate the extremes." Even were a technical case of forfeiture made out, the court is no longer required to render a judgment of ouster unless "the public good" appears to demand it. Rev. Stat. chap. 112, sec. 6.

The information filed in this case is defective in substance, and even if the plea itself should be found obnoxious to the demurrer, that demurrer must be carried back and sustained to the information. *People ex rel. Koerner* v. *Ridgely*, 21 Ill. 67; *People* v. *Mississippi R. R. Co.* 13 id. 67; *Lavalle* v. *People*, 68 id. 255.

It contains no allegation of time, as to the offences charged, or any of them. 1 Chitty's Pleadings, 257; Arch. Criminal Pleadings, 34; *Donnelly* v. *People*, 11 Ill. 553.

It fails to set out or intelligibly refer to the acts, or parts of acts, on which the claim of non-user and forfeiture is based. High on Extraordinary Remedies, secs. 724, 727.

It contains no certain and proper allegations of the unlawful acts or practices of the defendant complained of, but only general and indefinite charges. *The King* v. *Roberts*, 3 Salk. 198; *Lavalle* v. *People, supra.*

Mr. JAMES McCARTNEY, in reply:

In an information in the nature of a *quo warranto* the People are not required to show anything. It calls upon the defendant to show by what right he exercises the franchise. The Attorney General is not bound to prove any fact save such as may be tendered by replication, upon which issue is taken. *Clark* v. *People ex rel. Crane*, 15 Ill. 213; *People* v. *Ridgely et al.* 21 id. 63; *People* v. *Bank of Niagara*, 6 Cow. 196.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The question is as to the sufficiency of the plea. The demurrer interposed by the Attorney General raises two principal objections in respect to the plea.

1. The first one is, that the company did not file a sworn statement with the Auditor of Public Accounts of the amount expended in improvements on or before the first Monday in January in each year, as required by its charter.

Section 7 of the charter reads as follows: "The State of Illinois hereby reserves the right to resume the control of the improvements hereby authorized, together with all the privileges thereunto belonging, at any time after twenty years from the time of the organization of the said company under this act, by paying to said company, or the stockholders thereof, the cost of said improvements and works, with six per cent interest thereon per annum; and the said company is hereby required to keep a true and accurate account of all expenditures made in erecting and completing said works and improvements, and to file a true and correct copy of the same in the Auditor's office of this State, on or before the first Monday of January in each year, attested by the oath of the president of such company."

The plea admits non-compliance with this requirement, and avers that it ceased to be operative by virtue of the supplementary act of 1865. (Pr. Laws 1865, vol. 2, p. 97, secs. 5, 8.)

Section 5 of the act last referred to is as follows: "That the said Kankakee Company, their associates, successors and assigns, shall hereafter have perpetual succession, and their rights of property shall in no way hereafter be abridged or impaired, or affected by any prior legislation. And they shall have the same right to lease the whole or any part of their properties that they now have by the amendments of 1859 to lease a portion thereof, and upon such conditions and for such term or terms of time as the directors of said company shall, from time to time, see fit to make."

We agree with defendant's counsel in the view that the keeping and filing of accounts of the expenses of the improvement was incidental, and subservient to the object of purchase by the State, that there might be means at hand of knowing the cost of the work, and which might be of aid and assistance in the exercise of the option to purchase; and if the right of purchase by the State has been relinquished, then that its incident, the keeping and filing of these accounts,

followed it, and is no longer in force, having become a thing of no use.    And we are inclined to the further view, that by the act of 1865 the State did yield up its right of purchase of this improvement.    The scope of the act of 1865 was in the aid and relief of the company, and for the increase of its rights and ability.    Under the original charter the company could effect no loans.    In 1865 barely two years remained before the State could resume the franchise and take the property, by paying its cost, with six per cent interest.    By the charter the existence of the corporation was limited to fifty years,—by the act of 1865 it was endowed with perpetual succession.    It was empowered to increase its capital stock at will.    It was authorized to mortgage its franchise and property, without limit as to time or amount, investing the directors with power to confer upon bondholders the right to convert the principal of the bonds into stock at any time within ten years.    It was further authorized to lease the whole or any part of its corporate rights and properties for any time, or on any terms the directors saw fit.    All this does not well consist with a power to take the property at the end of two years, on paying its cost, with interest, and in agreement with the tenor of the act the 5th section provides expressly that the company's rights of property shall in no way hereafter be abridged or impaired, or affected by any prior legislation.    This seems to us to be a repeal of said section 7 of the original charter for the State's resumption of control.    We perceive no other provision of prior legislation but this that had an operation to abridge, or impair, or affect the company's rights of property.    And the 8th section further provides, "that all acts or parts of acts, all sections or parts of sections, inconsistent with the provisions of this act are hereby repealed."

We are of opinion, then, that the not keeping and filing of these accounts, as directed by section 7 of the charter, is no cause of forfeiture.

2.   The second ground of objection to the plea is, that it admits a non-compliance with the following requirement of section 6 of the supplementary act of February 16, 1865: "Said company shall lock and slack-water said Kankakee river from Kankakee City to the east line of the State of Illinois, within eight years from the passage of this act, with works sufficient to pass canal boats of the size of line boats on the Illinois and Michigan canal."

The plea professes to justify only in respect to so much of the line of improvement described in the charter as has been actually undertaken and accomplished.   This is shown to be the part extending from the head of the Kankakee feeder for the Illinois and Michigan Canal to the upper limit of the pool or level created by the upper dam, known as dam No. 4, situated at Wilmington.   Including the extent of this level, and of the feeder, the improvement made furnishes continuous navigation for a distance of about twenty-one miles.   The plea states, in relation to the feeder, that by section 4 of the act of February 16, 1865, the trustees of the Illinois and Michigan Canal were authorized to deepen the feeder to the same depth of navigation as already exists in the main canal, and to establish and collect the same rate of tolls; that under this authority the trustees entered into joint arrangements with the managers of the company to perfect the feeder into a navigable channel; that the banks were raised, the State dam strengthened, a new guard lock built, etc.   This was done under the direction of the State officers, but at the sole expense of the company.   The plea then, after setting up the justification it does in respect to the portion completed, admits that the improvement from Kankakee City to the east line of the State of Illinois has not been commenced, and is no longer in contemplation by the defendant, and it professes to offer nothing which can be deemed a legal excuse for this omission.

In behalf of the defendant it is insisted that the charter, while granting to the Kankakee and Iroquois Navigation and Manufacturing Company the *privilege* of improving both of these rivers as far east as the State line, also bestowed upon them in express terms the option of stopping at any "intermediate point;" that this option has never been withdrawn or restricted by any subsequent law, but has in repeated amendatory and supplemental acts been recognized and confirmed, and that the 6th section of the act of February 16, 1865, which directs the company "to lock and slack-water the Kankakee river from Kankakee City to the east line of the State of Illinois, within eight years from the passage of this act, with works sufficient to pass canal boats of the size of line boats on the Illinois and Michigan Canal," is to be construed only as a positive limitation, in point of *time*, upon the further enjoyment of this option, so far as applicable to the particular portion of the work in this section specified, and was not intended to affect in any manner the rights of the company otherwise and elsewhere.

We do not so read the first section of the act of incorporation as giving in express terms to the company the right to construct the work from Wilmington to the feeder, and relinquish its privilege to construct any more of it if found beyond its means or inexpedient. The words relied on as doing so, are: "and also from and to any points on said streams intermediate the extremes hereinbefore mentioned." The power is given the company to improve the navigation of the two streams from points mentioned up the streams to the Indiana State line, "and also from and to any points on said streams intermediate the extremes hereinbefore mentioned." We attach to these words no other force than as excluding the idea that the whole work must be proceeded with and completed together, but allowing its prosecution and completion by sections. The purpose and object of the company is declared to be the improvement of the navigation of the two

rivers, the first improvement, however, to be made in the navigation of the streams, should be to perfect the navigation of the Kankakee river from the feeder to the town of Wilmington. It is an integral work of the improvement of the navigation of the two rivers which the act contemplates, and it admits no idea of separability or of optional privilege, more than may be found in the mode above prescribed of the doing of the work.

It is said that if we read *or* in place of *and*, in the words referred to, "*or* also from and to any points," etc., instead of "*and* also from and to any points," etc., there would be no room for dispute as to the correctness of the view taken by defendant,—that this is but a trifling grammatical variation, and that it is not an uncommon freedom for courts, in construing instruments, to substitute one of these conjunctions for the other, as the sense seems to suggest. But we fail to see that the sense of the context indicates that there should be made here the substitution which is suggested.

The original charter required work to be commenced on the Kankakee river within three years from the passage of the act of February 15, 1847. The company had suffered this period to expire without doing any work. Now, as respects defendant's construction of the clause in question having been repeatedly recognized by subsequent amendments, as claimed, the first of these amendments was passed February 15, 1851, (Private Laws, 1851, p. 212,) and it is this language of that act which is referred to and relied on: "Be it enacted," etc., "that the time allowed to the Kankakee and Iroquois Navigation and Manufacturing Company to complete their improvements of the Kankakee river as far as the town of Wilmington, be and the same is hereby extended to a period of eleven years from and after the passage of the act to which this is supplementary." This is the first of any limitation of time for the completion of the work, or any part of it. The original act prescribed none whatever, but this

amendment fixes the time for the completion of that part of the work which was to be first done (that to Wilmington) at eleven years. It is said at this time the entire franchise had been utterly forfeited as to the whole line, and here is only an extension to complete the improvement *as far as the town of Wilmington,* to eleven years. But the forfeiture had never been enforced by the State, and the cause of forfeiture being the not commencing the work within three years, this act was a waiver of the forfeiture as to the entire franchise. The improvement as far as the town of Wilmington is spoken of because that was the first which was to be made by the original act. We see nothing in the language here employed carrying the idea of division of the franchise. At the same session another act was passed to enable the inhabitants of the towns of Wilmington and Reed, an adjacent town on the river, to tax themselves in aid of the improvement from Wilmington to the feeder, the money to be applied, first, to that improvement; second, to the building of a bridge across the Kankakee river at the town of Wilmington. (Private Laws, 1851, p. 232.) Any money these towns might thus raise, it would be very proper should be applied upon the particular part of the work which especially benefited them. In 1857 another law giving the same right to the inhabitants of Kankakee county was passed, but nothing effectual was done under either law, and in 1859 they were repealed.

In 1859 the corporate name was changed to the "Kankakee Company," and the company was empowered to lease any and all its rights to improve the Kankakee river, for the purpose of navigation and manufacturing, from the head of the island at Wilmington to the Kankakee feeder, and authorizing the lessees to levy and collect tolls. Stress is laid upon the dropping of the name of Iroquois entirely, and styling the company the "Kankakee Company," as being inconsistent with the idea of an entire scheme for the improvement

of the Kankakee and Iroquois rivers, and an entire franchise for the improvement of both these rivers, as first set forth in section 1 of the original act. And so the same with respect to the power of leasing, the legislature having authorized the leasing of the portion named, it is said it could not have intended that the lessees who might undertake this part of the work should be placed at the risk of forfeiture if their lessors should be guilty of any default in respect to the improvement of any other portion of the streams. The legislature, of course, would not anticipate any forfeiture. They would suppose the company would do its duty, and comply with whatever conditions they were required to perform. Lessees of the franchise in part would, of course, take as in case of any other conditional estate, subject to the condition, and with the liability to forfeiture for breach of the condition, as in any case of a conditional estate.

It is dwelt upon that this was entirely a Wilmington project, for the benefit of Wilmington solely, and that there was no real purpose and design to extend the improvement any further than Wilmington, and that the power to make any improvement higher up was merely put in as it would be a desirable privilege to have in case in the distant future the company might desire its exercise. This might have been the purpose of the originators of the enterprise, but the State was one of the parties to the contract, and its purpose and object is to be found in the acts of the legislature, and they declare it to be, in the original act, the improvement of the navigation of the Kankakee and Iroquois rivers, the first improvement, however, in such navigation to be from the feeder to the town of Wilmington. The Iroquois river seems to have become somewhat subordinated in the scheme in its not being mentioned so prominently as the Kankakee in the subsequent acts of the legislature, and having been taken out of the name of the company. We regard it as one franchise for the improvement of the navigation of both rivers, the

most prominent feature of the work being the improvement from the feeder to Wilmington, that being required to be first made. All of the optional privilege which is claimed, that we see in the case, is in there being no time named for the beginning or completion of any other part of the work than that completed, and so far as there is any express obligation this might practically amount to an option to make any other part of the improvement or not.

The above appears to be the state of the legislation down to the act of 1865, which is the last act. Section 6 of that act, as above recited, is: "Said company shall lock and slack-water said Kankakee river from Kankakee City to the east line of the State of Illinois, within eight years," etc. This act greatly enlarged the franchise of the company, giving to the company largely increased powers and privileges, but it was optional to accept this amendatory act or not. It might have declined acceptance of the act, and then the duty enjoined by this 6th section would not have rested upon it. But it did accept the amendment, and by the acceptance it undertook to do what this section enjoined. The requirement became an express condition annexed to the grant of the franchise conferred, which the company must have performed to entitle it to a continuance of its franchise. The non-compliance with the requirement was *per se* a misuser, and a cause of forfeiture of the franchise as for condition broken. The law to this effect is clear and well settled. *London City* v. *Vanacre,* 1 Lord Raymond, 496; *The People ex rel.* v. *Kingston and Middletown Turnpike Co.* 23 Wend. 193; *Thompson* v. *People,* id. 537; *Chesapeake and Ohio Canal Co.* v. *Baltimore and Ohio R. R. Co.* 4 Gill & J. 1; *The People, etc.* v. *Fishkill and Beekman Plank Road Co.* 27 Barb. 445; *The People* v. *The Phœnix Bank,* 24 Wend. 431; *Attorney General* v. *P. and R. R. R. Co.* 6 Ired. 456; Angell & Ames on Corporations, secs. 774, 776; High on Extraordinary Remedies, sec. 651.

The plea admits that the improvement from Kankakee City to the east line of the State of Illinois has not been commenced, and is no longer in contemplation by the defendant. The law is not questioned by defendant's counsel that the non-compliance with this requirement of section 4 is cause of forfeiture, but it is claimed to be a condition which respects only that portion of the improvement between Kankakee City and the State line, and that the breach is ground of forfeiture of only so much of the franchise as relates to that portion of the improvement, and that that part of the franchise may be forfeited, and the company still hold and enjoy the part of the improvement which they have completed, without the franchise, as respects that part, being affected by the breach of the condition. It is said that as before there was no obligation, but merely an optional privilege, to make this improvement above Kankakee City, it could not have been the intention of the legislature, although the terms of the requirement are express and peremptory, to impose any obligation on the company, as this whole act of 1865 is for the benefit of the company, in its aid and relief. And so from this deduced intention of the legislature it is insisted that the true construction of this requirement is, not that it imposes any obligation on the company, but that it only limits the time for the exercise of its optional privilege of improving the navigation of the river above Kankakee City, and failing to make such improvement within the eight years limited, the privilege to improve that portion of the river is terminated, and that that is all the effect. It is true that the provisions of the act of 1865 are mainly beneficial to the company, yet as such valuable additional rights and privileges are by the act granted to the company, it might very well consist with the beneficial scope of the act that something should be exacted from the company in return—even this requirement of the 4th section.

The act of 1865 uses this language: "That the said Kankakee Company, the better to enable them to carry into effect the purposes of the act to which this act is supplementary, may, at their option, increase their capital stock to such an amount as may be required to cover the cost of constructing all the works authorized by their charter, and by the acts amendatory thereof and supplementary thereto." At that time the improvement below Wilmington had actually been made, and was, and had been for about three years, in actual use. We see nothing in this language employed favoring any idea of divisibility of the franchise, or that the improvement below Wilmington was a separate and independent work, but showing rather the same purpose of unity and entirety which we find as manifested in the original act. The requirement is in terms the most express, that the company *shall* make the improvement between Kankakee City and the east line of the State within eight years. We think it inadmissible to construe away such language as not meaning what it plainly expresses, from the supposed intention of the legislature not to impose anything onerous upon the company.

We can see here but one entire franchise for the improvement of these streams, and that this obligation to make the improvement above Kankakee City was a condition annexed to this entire franchise. And we can not admit the idea, so ably and ingeniously pressed upon us, of the divisibility of the franchise, that there became a separate, independent franchise as to the completed portion of the improvement below Wilmington, and a like one as to the portion of the improvement above Kankakee City, to which latter only the condition was annexed, and that it was the franchise as to this last named portion of the improvement only which was forfeitable for breach of the condition. We think the non-compliance with the requirement in question was cause of forfeiture of the entire franchise. An abuse in a particular department

of an entire franchise is cause of forfeiture of the whole franchise.    Angell & Ames on Corp. sec. 776.

The hardship upon the company of enforcing a forfeiture is urged as a reason against applying this remedy.    This is the common argument addressed to courts in these cases, and the answer they make is, that the appeal is made to the wrong forum,—that this is a question for the legislature that prescribed the requirements of the charter.    The courts have no dispensing power; that the only questions for a court in such cases are, is the act required, and has it been performed. Yielding to such considerations of hardships would be a doing away with the established legal remedy of forfeiture for the breach of conditions annexed to estates.    Inconvenience is the necessary result of the application of such a remedy.    It is held to be most important to the public interest that the grantees of public franchises should be held to a faithful performance of the obligations which they assume, and to secure this, courts must administer the prescribed remedy in case of failure.

Lastly, the court is invoked to exercise its discretionary power under the statute, and only assess a fine, the statute providing that instead of judgment of ouster from a franchise for an abuse thereof, unless the court is of the opinion that the public good demands such judgment, a fine may be assessed instead.    Had there been but the omission of some duty of minor importance, the alternative of a fine might properly be considered; but the non-performance here is of a thing which is of the essence of the contract,—it goes to the object of the incorporation, not doing the very thing the performance of which was the purpose and object for which the company was instituted.    It is failure by the corporation to act up to the end of its creation.    The demand of public good is nothing less than that there should be a resumption by the State of the corporate franchise of which there has been such misuser,—that the company should be made to give

way, so as to afford opportunity, through some other instrumentality, for the accomplishment of this work of public advantage, the improvement of the navigation of these two rivers, or at least of the Kankakee, to the Indiana State line.

It is suggested that if the State should take into its hands the portion of the work which has been completed it would fall into decay and ruin, from inability of the State to make repairs and keep it up, because of the provision of the constitution of 1870, that "the General Assembly shall never loan the credit of the State, or make appropriations from the treasury thereof, in aid of railroads or canals." We do not understand that this provision would apply. It does not respect rivers,—and we do not consider that a river becomes a canal from having its navigation improved by artificial means.

It is urged, finally, that the information is defective in not setting out the causes of forfeiture, and that the demurrer should be carried back and sustained to the information. The information in this respect appears to conform to the precedents. An information in the nature of a *quo warranto* against a corporation, for a forfeiture of its franchises, may charge it generally with usurpation, and on defendant's setting forth the act of incorporation, and justifying under it, the Attorney General may reply the cause of forfeiture generally. *The People* v. *Bank of Niagara*, 6 Cow. 196. The plea here admits the facts which are relied upon as causes of forfeiture, thus dispensing with the necessity of a replication showing them, and presenting upon demurrer to the pleas the whole merits of the case.

Being of opinion the demurrer to the plea should have been sustained, the judgment of the circuit court is reversed and the cause remanded.

*Judgment reversed.*