## CARTER OIL CO. v. WATSON et al.

### No. 7418.

Circuit Court of Appeals, Seventh Circuit.

Dec. 12, 1940.

196

Leal W. Reese, of Taylorville, Ill., for appellants.

Walter Davison and Craig Van Meter, both of Mattoon, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff, The Carter Oil Company, filed a complaint for an injunction to restrain the defendants from continuing to drill for oil and gas on a tract of land located in Fayette County, Illinois. The defendants answered the complaint claiming ownership of the land in themselves. After hearing the evidence the District Court entered a decree finding plaintiff was the owner of all the oil and gas and other minerals in and under the land involved, and permanently enjoined the defendants from endeavoring to drill and from drilling for oil or gas in and under the land involved. To reverse the decree defendants appeal.

This appeal presents the single question, —whether a deed executed in 1905 passed title to the center of Big Creek. If it did, the decree is right and the case must be affirmed.

Charles H. Watson was the owner of the south half of the northeast quarter and the northeast quarter of the northeast quarter in Section 29 Township 8, North, Range 3, East of the Third Principal Meridian, an L-shaped tract of land consisting of 120 acres. The land was timber pasture, unsuitable for cultivation. Angling in a northwesterly and southeasterly direction through the northeast quarter of the northeast quarter runs Big Creek, about 60 feet wide and from 4 to 6 feet deep, with sloping banks on either side about 10 feet high and some 20 feet in width. About 10 acres lie north of the creek and about 30 acres lie south of the creek.

On June 16, 1886, he conveyed to Moses Logue "The northeast quarter of the northeast quarter of Section 29, * * *, containing 6 acres off of the north side of the above described tract of land, Big Creek being the south boundary line of said 6 acres."

On February 20, 1905, he conveyed to his brother, George A. Watson, 40 acres in the south half of the northeast quarter of Section 29, and a tract of land described as follows: "Alsow to begin at the southwest corner of the northeast quarter of the northeast quarter of Section 29 thence north to the creek being the north boundary line thence on the south side of creek to intersect the section line thence 20 feete south thence west 80 rods mor or less thence south 80 rods thence west 20 feete to the place of beginning." On January 16, 1915, George A. Watson conveyed this land to W. C. Buzzard and G. A. Buzzard and they in turn, on June 29, 1938, conveyed to plaintiff the title to the minerals in the land.

After the execution of the 1905 deed George A. Watson entered into the possession of the land conveyed to him and measured off a roadway 20 feet wide leading to the land, beginning at the northeast quarter and thence running northwest, parallel with and just south of the south

bank of Big Creek to the west side of the 40-acre tract, thence south along the west side of the 40-acre tract.

On June 4, 1910, Charles H. Watson conveyed to G. W. Weaber 15 acres in the southeast part of the northeast quarter of the northeast quarter of Section 29, thus: "Beginning at the southeast corner of said northeast quarter of the northeast quarter of Section 29, running thence west 51 rods, thence north 62 rods, to a point within 20 feet south of the south boundary line of Big Creek, running thence 20 feet south to said boundary-creek line, southeast to the east line of said northeast quarter of the northeast quarter of Section 29 * * * to a point 36 rods north of the starting point, running thence south 36 rods to the place of beginning. (The 20 feet south of Big Creek being a private road reserved.)"

On October 11, 1910, Charles H. Watson conveyed to Louis B. Weaber the following described land: "Beginning at a point about 51 rods west of the southeast corner of the northeast quarter of the northeast quarter of Section 29 * * * thence north about 61 rods, to a road at Big Creek, thence in a northwesterly direction to within 20 feet of the west line of said 40-acre tract, thence south to quarter section line, thence east to beginning, 16 acres more or less."

On May 20, 1939, the widow and children of Charles H. Watson, deceased, conveyed by a quit-claim deed to the defendant, Everett S. Watson "All that part of the northeast quarter of the northeast quarter of Section 29, * * * lying between land deeded by C. H. Watson to Moses Logue, * * * and the road deeded by C. H. Watson to Geo. A. Watson * * *." Thereafter, on December 8, 1939, Everett S. Watson executed an oil, gas and mining lease to J. A. Johnson, who commenced to drill a well for oil and gas upon the property.

The plaintiff claims that the north boundary line of the tract of land here involved, conveyed by the 1905 deed, was the center of Big Creek, while the defendants contend that only a strip of land 20 feet wide along the south bank of the creek was deeded. It is obvious, then, that the rights of the respective parties depend upon the interpretation to be given to the 1905 deed.

 It is a well settled rule of law that a grant of land bordering upon a river carries to the grantee the exclusive right and title to the center of the stream unless, by the terms of the grant, an intention is clearly shown to stop at the stream's edge. Allott v. Wilmington Light & Power Co., 288 Ill. 541, 123 N.E. 731, and cases cited therein. See also Braxon v. Bressler, 64 Ill. 488; Village of Brooklyn v. Smith, 104 Ill. 429, 44 Am.Rep. 90; Peoria Gas Co. v. Dunbar, 234 Ill. 502, 85 N.E. 229. And this is true irrespective of whether the metes and bounds description would take only from the starting point to the edge of a creek where the language indicates that the creek was the monument. Piper v. Connelly, 108 Ill. 646, 654; Chicago R. I. & P. Ry. Co. v. People, 222 Ill. 427, 434, 78 N.E. 790; Brewster v. Cahill, 199 Ill. 309, 315, 65 N.E. 233; and Allott case, supra, 288 Ill. 550, 123 N.E. 731. Streams are often referred to in deeds as monuments, and are regarded as such when the land conveyed abuts upon them. Henderson v. Hatterman, 146 Ill. 555, 34 N.E. 1041.

Defendants concede the general rule but suggest it has no application here. They argue that the grant stopped at the edge of the creek, point to the words "south side of the creek," which they claim negatives the assumption that the boundary is the center of the thread of Big Creek, and that the words "to the creek" in a deed, as a boundary designation, mean the top of the bank of the creek.

In support of their contention, as being squarely in point, Rockwell v. Baldwin, 53 Ill. 19 and People ex rel. Com'rs v. Board of Supervisors, 125 Ill. 9, 17 N.E. 147, 153, are cited. In the Rockwell case, supra, the defendant operated a mill. A bill was filed to restrain him from cutting a ditch from his mill to carry off the water from the wheel, on the ground that the cut was on complainant's land. In the deed executed by complainant and under which defendant claimed title, it described the property "down the west line of the creek." The court considered the "line" of the creek as the same as "bank" of the creek, and said (53 Ill. page 23): "There are forcible reasons why no portion of the bed of the creek was intended to be included in the grant to complainant, for the reason that on the land he granted to the defendant, Rockwell, a mill was erected, which might require the exclusive use of the bed of the creek, and it is not reasonable to suppose that he would grant away its use without

express words, showing such intention. The success of the mill depended very much on the free and uninterrupted flow of the water below the dam, and to insure that, it was essential the bed of the stream should be his own, exclusively, and which he has retained by limiting his grant to complainant to the west bank of the creek." In the Board of Supervisors case, supra, the charter of the town of Edwardsville defined the limits of the town "to Gordon's branch; thence down the meanderings of said branch to the margin of Cahokia creek; thence down on the left side of said creek." The court held that as to Gordon's branch, the line defined was the middle of the stream, but as to Cahokia Creek, the line of the town limits was the bank of the creek.

As we read these two cases, they are of no help to defendants, for the reason that the Rockwell case is clearly distinguishable on the facts and the Board of Supervisors case seems to support plaintiff's contention.

■ It is also argued that the words "south side of the creek to intersect the section line" indicate that none of the land which lies north of the south side of the creek was conveyed by the deed. In so arguing, counsel for defendants seems to overlook the words "thence north to the creek, being the north boundary line," which also are a part of the description of the land described. Even so, the Illinois Supreme Court has considered somewhat similar contentions, and has held that the word "side" where used in a description as the west side of the northwest quarter, as meaning the west half, Hill v. Blackwelder, 113 Ill. 283, and that the north side of the southwest quarter meant north half, Winslow v. Cooper, 104 Ill. 235. Nor can defendants find comfort in the fact that the word "to" the creek is used in the deed, for the reason that it has almost universally been held that a description "to" a stream does not exclude the stream as a boundary. 8 Am.Jurisp. 763, Sec. 25; See also City of Chicago v. MacChesney,

240 Ill. 174, 88 N.E. 560, and White v. Knickerbocker Ice Co., 254 N.Y. 152, 172 N.E. 452, 74 A.L.R. 591.

■ In disposing of this case the District Court expressed the thought that the description here involved, disclosed an awkward expression, but that the intention of the parties to the deed could be gathered from the deed itself without resorting to extrinsic evidence, and the court said "that no pertinent fact might fail to be weighed, I have admitted and considered extrinsic evidence. Given a reasonable interpretation as of the time of the occurrence of the events, I find in the circumstances shown by the extrinsic evidence a confirmation of my conclusion, arrived at solely from a consideration of the provisions of the deed, that the northern limit of the land conveyed is the middle of Big Creek and not its south bank." That the District Court was privileged to consider the surrounding circumstances, there can be no question, Brewster v. Cahill, supra; White v. Knickerbocker Ice Co., supra.

■ Some of the circumstances which the District Court undoubtedly had in mind were (1) that Charles H. Watson had on June 16, 1886, prior to the 1905 deed, conveyed to Moses Logue, 6 acres. off of the north side of Big Creek and made the creek the south boundary line; (2) that after the 1905 deed he did not have access to the creek; (3) that in 1910 he conveyed all of his remaining interest south of the 20 foot strip, thereafter moved to Indiana, and since that time has made no claim to the property; (4) that no road or trail had been in existence along Big Creek since 1915; and (5) that when Buzzard purchased from George A. Watson he (Watson) stated: "I'll give you that road. If you want to sell this land to anybody across the creek * * * they should have a right to a right of way in the premises."

We think the decree of the District Court was right, and it is affirmed.