THE HENDERSON LOAN AND REAL ESTATE ASSOCIATION

*v.*

THE PEOPLE *ex rel.* Walter F. Cobb.

*Filed at Springfield November 10, 1896.*

1. BANKS—*special bank charters subject to general Banking act.* Every corporation with banking powers, existing under a special charter passed by the legislature of this State, is subject to the general Banking act, (Laws of 1887, p. 89,) and in so far as its charter conflicts with such act that charter is modified or changed.

2. SAME—*proviso to section 12 of Banking act construed.* The proviso to section 12 of the Banking act, (Laws of 1887, p. 92,) making all corporations with banking powers subject to that act, applies to the whole act, and its operation is not confined to the particular section to which it is attached.

3. SAME—*power of loan associations to deal in real estate—language of Banking act construed.* A loan association authorized by special charter to receive deposits, loan money, discount notes and buy and sell negotiable paper is a corporation "with banking powers," within the meaning of section 12 of the general Banking act, (Laws of 1887, p. 92,) and its dealings in real estate are limited by that act.

4. SAME—*banking corporation loses its franchise by nonuser.* A corporation with banking powers which discontinues business, without excuse, for the space of fifteen years, may be deemed to have forfeited its charter by nonuser, as for condition broken, in not performing obligations assumed for the public benefit.

.APPEAL from the Circuit Court of Macoupin county; the Hon. JACOB FOUKE, Judge, presiding.

This was a proceeding by *quo warranto* to dissolve a corporation known as the Henderson Loan and Real Estate Association. The information contained two counts. In the first count it is alleged that on January 11, 1868, in the city of Carlinville and county of Macoupin, State of Illinois, there was existing, and from thence hitherto has existed in said city, county and State, a certain corporation and body politic known and styled "The Henderson Loan and Real Estate Association," formed under a certain act of the General Assembly of the State of

Illinois, which was approved by the Governor of said State on February 28, 1867, entitled "An act to incorporate the Henderson Loan and Real Estate Association." The first section of the act provides that certain persons therein named, their associates, heirs, assigns and successors, shall be a body politic and corporate, by the name and style, etc. The second section provides that books may be opened for subscription for stock. The third section provides that the capital stock shall be $100,000, with power to increase the same to $500,000, divided into shares of $100 each. Section 4 was as follows: "The said corporation shall have power to borrow money and to receive money on deposit, and pay interest thereon, and to loan money, either within or without the State, at any rate of interest not exceeding that now or hereafter allowed by law to private individuals, and to discount loans; and in computation of time thirty days shall be a month and twelve months a year; and to make such loan payable either within or without this State, and to take such securities therefor, real or personal or both, as the directors or managers of said corporation shall deem sufficient, and may secure the payment of such loans by deeds of trust, mortgages or other securities, either within or without this State; may buy and sell negotiable paper and other securities; may open and establish a real estate agency; may purchase and sell real estate, and shall have the power to convey the same in any mode prescribed by the by-laws of such corporation; may accept and execute all such trusts, whether fiduciary or otherwise, as shall or may be committed to it by any person or persons, or by the order or direction of any court or tribunal or other legally constituted authority of the State of Illinois or of the United States, or elsewhere; may make such special regulations in reference to trust funds or deposits left for accumulation or safe keeping as shall be agreed upon with the depositors or parties interested, for the purpose of accumulating or increasing

the same; may issue letters of credit and other commercial obligations, not, however, to circulate as money, and may secure the payment of any loans made to said company in any way the directors may prescribe." Section 11 was as follows: "Until the sum of $5000 shall have actually been paid in on subscription to the capital stock the company shall not commence, and this act shall be void unless said company shall organize and proceed to business within two years after the passage hereof. The said company shall be subject to the provisions of any general law hereafter passed on the subject of banking, trust and deposit companies."

It is alleged that $100,000 capital stock was subscribed and that the association became organized under the act; that said corporation, from the time of its organization as aforesaid to the present time, with the exception of the interval hereinafter mentioned, has borrowed money and received money on deposit and paid interest thereon; has loaned money, both within and without this State, at any rate of interest allowed by law to private individuals; has discounted loans; has made such loans payable either within or without this State; has taken such securities therefor, real or personal or both, as the directors or managers of said corporation have deemed sufficient, and has secured the payment of such loans by deeds of trust, mortgages and other securities, both within and without this State; has bought and sold negotiable paper and other securities; has opened and established a real estate agency; has purchased and sold real estate, and has conveyed the same in the mode prescribed by the by-laws of the said corporation; that the General Assembly of Illinois passed an act, which was approved by the Governor of said State on June 16, 1887, adopted by the people at an election held November 6, 1888, and proclaimed in force by said Governor December 6, 1888, entitled "An act concerning corporations with banking powers," which act, in regard to owning and

holding of real estate by such corporations, provided as follows:

"Sec. 9. Associations organized under this act shall be bodies corporate and politic for the period for which they may be organized, may sue and be sued, may have a common seal which they may alter or renew at pleasure, may own, possess and may carry as assets the real estate necessary in which to do its banking business, and such other real estate to which it may obtain title in the collection of its debts, but shall not carry in its assets any real estate, except its banking house, for a period of more than five years after acquiring title to the same."

That in section 12 of said last mentioned act it is provided as follows: "*And provided further*, that any corporation with banking powers availing itself of or accepting the benefits of or formed under this act, and all corporations with banking powers existing by virtue of any special charter or general law of this State, shall be subject to the provisions and requirements of this act in every particular, as if organized under this act;" that by virtue of the provisions of the said general Banking law which was proclaimed in force December 6, 1888, as aforesaid, and the said reservation clause in the charter of said association, said corporation, on and after said December 6, 1888, became and was subject to the provisions and requirements of said general Banking law, but that said corporation, since said December 6, 1888, has conducted its business in the same manner as it did prior to that time, and has opened and established a real estate agency, has purchased and sold real estate and conveyed the same in the mode prescribed in the by-laws of the corporation; that said corporation, since December 6, 1888, has purchased, held, owned, possessed and carried as assets, and now does hold, own, possess and carry as assets, real estate situate in the county of Cook and State of Illinois not necessary in which to do its banking business and the title to which it has not obtained in

the collection of its debts; that said corporation claims the right so to purchase, hold, own, possess and carry as assets real estate not necessary in which to do its banking business and the title to which it has not obtained in the collection of its debts, under and by virtue of the rights, powers and franchises granted to it in and by its said charter.

In the second count it is alleged that said association was formed and has existed under a certain act as aforesaid, and was duly organized and began to carry on the business for which it was formed on January 11, 1868, and continued to conduct said business until April 30, 1878; that on said April 30, 1878, said corporation went out of business, and for a period of about fifteen years, to-wit, from April 30, 1878, to April 10, 1893, transacted no business of any kind or nature whatsoever, and during said period neglected and failed to use and exercise any of the rights, powers and franchises granted to it in said act of incorporation; that during the year 1868, meetings of the stockholders and directors and elections of officers of said association were held in regular and proper manner as prescribed by its charter and by-laws, but that after December 5, 1868, neither such meeting nor such election was held until January 1, 1875, though its charter and by-laws provided that its directors should be elected annually; that on January 1, 1875, its stockholders held a meeting and elected directors pursuant to its by-laws, and on the same date the directors so elected held a meeting and elected officers of said association in accordance with its by-laws; that from and after January 1, 1875, no meeting of its stockholders or directors or no election of its officers was held until after said general Banking law was proclaimed in force, to-wit, until April 10, 1893; that since April 10, 1893, said corporation has resumed the operation of said business and is now conducting the same, and that said corporation now claims the right to use and exercise any and all of the rights,

powers and franchises originally granted to it in and by its said charter.

The defendant demurred to the information but the court overruled the demurrer, and the defendant elected to stand by the demurrer.   The court entered a judgment of ouster, as prayed for in the petition.

J. R. CUSTER, and J. A. GRIFFIN, (GEORGE HUNT, of counsel,) for appellant:

Mere nonuser, unless it is shown to be wrongful or injurious to the public or in violation of a charter provision, is not a sufficient ground for forfeiture.   Morawetz on Private Corp. (2d ed.) sec. 1025; *People* v. *Turnpike Road*, 23 Wend. 221; *Canal Co.* v. *Railroad Co.* 4 G. & J. 1; *People* v. *Bank*, 6 Cow. 215.

The mere omission by a corporation to exercise its powers does not, of itself, unconnected with other acts, work a forfeiture of its charter.   *Attorney General* v. *Bank*, Hopk. Ch. 411.

The forfeiture of corporate franchises is not to be allowed except under express limitation, or for a plain abuse of power by which the corporation fails to fulfill the design and purpose of its organization.   High on Ex. Legal Rem. chap. 15, sec. 649.

The office of a proviso is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of its extent.   1 Kent's Com. 463; *Minis* v. *United States*, 15 Pet. 445.

EDWARD C. KNOTTS, State's Attorney, (CHARLES C. TERRY, of counsel,) for appellee:

A nonuser or a misuser will warrant the forfeiture of a charter.   *People ex rel.* v. *Improvement Co.* 103 Ill. 491; *Terrett* v. *Taylor*, 9 Cranch, 43; Cook on Corp. Law, secs. 633, 634, and cases cited; Angell and Ames on Corp. sec. 76; 4 Am. & Eng. Ency. of Law, 304, 305, and cases cited;

Field on Corp. sec. 455; 1 Cooley's Blackstone, (3d ed.) 318, 319, and notes; Potter's Law of Corp. sec. 670.

A corporation authorized to receive money on deposit, and to loan money and take securities therefor, and to discount loans, and to buy and sell negotiable paper and other securities, and to make special regulations in reference to trust funds, must be regarded as having banking powers. *Ward* v. *Johnson,* 95 Ill. 215; *Reed* v. *People ex rel.* 125 id. 592.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Upon an examination of section 4 of the charter of the appellant corporation it will be found that the legislature authorized the corporation to engage in a general banking business, except that it could not issue bills, and in addition to banking the corporation was authorized to engage in a general real estate business, with full power to buy, sell and hold real estate, and lease and improve the same, in the same manner and with like power as an individual or natural person. Under the charter as originally enacted it is plain that appellant had the power to transact a general real estate business. But it will be observed that section 11 of the charter provides: "The said company shall be subject to the provisions of any general law hereafter passed on the subject of banking, trust and deposit companies." Under this clause in the charter the State expressly reserved the right, by general law, to change the charter, and the charter was accepted by the loan and real estate association upon this condition, and the first question to be considered is whether the legislature, since the charter was granted, has by general law changed the charter and taken away any of the powers which were granted under it. If it has, then the corporation has no right to exercise any power which has been taken away by the legislature.

It is set out in the information and admitted by the demurrer, that the legislature passed an act concerning

corporations with banking powers, which was adopted
by the people by a vote at an election held for that pur-
pose, and became a law of the State on December 6, 1888.
Section 9 of the act provides that an association organ-
ized under the act may own such real estate as is neces-
sary in which to do its banking business, and may take
such other real estate to which it may obtain title in the
collection of its debts, but shall not carry any real estate
in its assets, except its banking house, for more than
five years after acquiring title thereto. This prohibits
banks organized under the State law from engaging in or
carrying on a real estate business. They may own the
real estate in which their business is transacted, and
they may, in the collection of debts due the bank, acquire
real estate in liquidation of indebtedness due, but this
must be sold within five years after it is obtained. To
this extent they may, under the Banking act, own and
hold real estate, but they cannot go any further in that
direction. The wisdom of the provision is obvious. The
main object of establishing a bank is, or ought to be, to
afford a safe place for the deposit of money and to ac-
commodate the public by making loans and discounting
commercial paper, but if the funds of a bank are invested
and tied up in real estate these objects will, of necessity,
be defeated.

Section 12 of the Banking act makes provision for any
corporation organized under the act or organized under
a special charter to change its name, change its place of
business, to increase or decrease its capital stock, to in-
crease or decrease its number of directors, or to consoli-
date such corporation with any other corporation having
banking powers. After providing the steps to be taken
to make any of the changes specified, the section con-
tains the following: "*And provided further*, that any
corporation with banking powers availing itself of or
accepting the benefits of or formed under this act, and
all corporations with banking powers existing by virtue

of any special charter or general law of this State, shall be subject to the provisions and requirements of this act in every particular, as if organized under this act." This provision in plain terms makes every bank in the State organized under a special charter passed by the legislature of the State subject to the general Banking act, and in so far as a charter may conflict with the general act that charter is modified and changed by that act. In so far, therefore, as the Henderson Loan and Real Estate Association was authorized by its charter to purchase, hold and sell real estate, that power was taken away by the Banking act of 1887.

But it is said, the proviso should be construed as affecting the section or paragraph to which it is annexed, only. We do not concur in that view. A proviso is something engrafted upon a preceding enactment, and is legitimately used for the purpose of taking special cases out of the general enactment and providing specially for them. (Potter's Dwarris on Stat. 118.) There are, no doubt, cases where a proviso might be confined as affecting the section only to which it is annexed, but we do not understand this to be the general rule. Here it is manifest that the proviso was intended to apply to the act and not to a particular section, and when such is the case it should be given that construction.

But it is said that the language in section 12 of the act of 1887, "any corporation with banking powers" and "all corporations with banking powers existing by virtue of any special charter or general law of this State," does not apply to the Henderson Loan and Real Estate Association, for the reason that under the constitution of 1848, which was in force when appellant received its charter, a corporation with banking powers was understood to be a bank of issue. In *Reed* v. *People*, 125 Ill. 592, we had occasion to consider somewhat the meaning of the words "banking powers," as used in the organic act of 1870, and we there held that in a commercial sense banks were of

three kinds, to-wit, of deposit, of discount and of circu-
lation, and a corporation authorized to receive deposits,
discount notes and invest the proceeds in public securi-
ties and declare dividends must be regarded as having
banking powers.   Here the Henderson Loan and Real
Estate Association was not empowered to issue bills to
circulate as money, but it was authorized to receive de-
posits, loan money, discount notes and bills, buy and sell
negotiable paper and other securities, and there can be
no doubt that it was a corporation with banking powers,
within the meaning of the act of 1887.

   The next question presented is, whether the facts set
up in the second count of the information were sufficient
to authorize the judgment.   It appears from the aver-
ments of this count that the corporation was organized
and commenced business on January 11, 1868, and con-
tinued business until April 30, 1878, when the corporation
went out of business, and for a period of fifteen years,
to-wit, from April 30, 1878, to April 10, 1893, transacted
no business of any character whatever, but during said
period neglected and failed to use or exercise any of the
rights, powers or franchises granted by the act of incor-
poration; that while the charter required the stockholders
to elect directors annually, from December, 1868, until
January, 1875, no election of directors was had, and after
January, 1875, no directors were elected until the year
1893.   The grant of corporate rights and privileges by
the State and their acceptance by the appellant corpo-
ration created a contract, under which the corporation
was bound to exercise its corporate rights and powers,
and its failure to do so for a period of fifteen years with-
out any excuse whatever constituted a gross and delib-
erate violation of its duties as a corporation.   By section
11 of the charter it is expressly provided that the charter
shall be void unless said company shall organize and
proceed to business within two years.   From this pro-
vision it is plain that the legislature intended that the

franchises granted should be used, and that continuously; and as was said by this court in *People ex rel.* v. *Kankakee River Improvement Co.* 103 Ill. 491, where a similar question was involved, "the non-compliance with the requirement was *per se* a misuser, and a cause of forfeiture of the purchase as for a condition broken."

The powers and privileges conferred upon appellant by the charter were of a public nature. As a corporation with banking powers it was clothed with power to receive deposits from the people, to make loans to the people, to discount commercial paper, to receive trust funds on deposit, to issue letters of credit,—all matters pertaining to the public. Having assumed these extraordinary powers and privileges from the State it owed a duty to the public which it grossly neglected to discharge. Here was a clear breach of trust which would authorize a forfeiture. (*People* v. *Bristol, etc. Turnpike Road,* 23 Wend. 221.) In *Terrett* v. *Taylor,* 9 Cranch, 43, Mr. Justice STORY said: "A private corporation created by the legislature may lose its franchises by a misuser or nonuser of them, and they may be resumed by the government under a judicial judgment upon a *quo warranto* to ascertain and enforce the forfeiture. This is the common law of the land, and is a tacit condition annexed to the creation of every such corporation." In *Chesapeake and Ohio Canal Co.* v. *Baltimore and Ohio Railroad Co.* 4 G. & J. 1, the court, in deciding the case, among other things said, the corporation "may be dissolved by a forfeiture of its charter, through abuse or neglect of its franchises, as for condition broken, there being a tacit condition in every such grant that the corporation shall act up to the end of its institution."

We think the judgment of the court warranted by the facts, and it will be affirmed.     *Judgment affirmed.*