# REPORTS OF CASES

DETERMINED IN THE

# SUPREME COURT,

## MARCH TERM, 1881.

---

### OREGON RAILWAY COMPANY *v.* CITY OF PORTLAND.

#### CORPORATIONS—APPROPRIATION OF PUBLIC PROPERTY.

Under the provisions of the statute, without an agreement with the local authorities, a corporation cannot appropriate a highway or public grounds, already dedicated to a public use, to its exclusive use and occupation.

In such case the grant of power to take property appropriated to public uses, cannot be exercised in such a manner as would obstruct or subvert such public uses

The appropriation of a public levee by a railroad corporation, for the purpose of erecting thereon permanent structures, such as depot buildings, side tracks, etc., would create such obstructions as would defeat or extinguish the public use, and is not within the grant of power, without an agreement with the local authorities as prescribed by the latter clause of section twenty-eight.

APPEAL from Multnomah. The facts are stated in the opinion.

*Ellis G. Hughes,* for appellant.

That there is in every state government the right of eminent domain, to which all property is subject, whether corporeal or incorporeal, is a principle well recognized, and it is in fact through this power only that all internal improvements in a state are carried on. (*West River Bridge Co.* v. *Dix,* 6 How., 531; *Beekman* v. *Saratoga,* 17 Conn., 461; *Wellington, et al.,* v. *Petitioners,* 16 Pick., 102.)

Nor is the control over it lost by the fact of its being already devoted to a public use. (*Locks and Canal* v. *Lowell*, 7 Gray, 226; *Eastern R. R. Co.* v. *Boston and Marine R. R. Co.*, 111 Mass., 128.)

The one only thing necessary to authorize the taking of public grounds or lands devoted to one public use for another public use, is a legislative authority therefor. (*Matter of City of Buffalo*, 68 N. Y., 179; *Matter of Boston and Albany R. R. Co.*, 53 N. Y., 576.)

That these grounds are public grounds is admitted. Being such, though within the corporate limits of the city of Portland, they are under the control of the legislature. The legislature has in plain and unmistakable terms declared that the public use to which they were devoted as public grounds is subordinate to the uses of a railroad, either for track, side-track or depot purposes, and that they may be taken for such use either on being designated therefor by the proper authorities of the city, or without such designation, if such authorities fail or refuse to make a designation of some public grounds on request. The city has no rights therein which are not subject to the most absolute control by the legislature at any time. (*Darlington* v. *Mayor of New York*, 31 N. Y., 191; *People* v. *Kerr*, 27 N. Y., 170; Dillon on Municipal Corporations, sec. 43.)

*J. N. Dolph, Shattuck & Killin, and J. C. Moreland,* for respondent.

The doctrine that corporations, who derive power from the legislature to take property by the right of eminent domain, cannot exercise such power in reference to property already dedicated to public use, without an express grant, cannot be contradicted. (77 N. Y., 248.)

Land already devoted to another public use cannot be taken under general laws, when the effect would be to extinguish a franchise. (Mills on Eminent Domain, sec. 47; 7 Wall., 272; 1 Newberry, 541.)

The privilege of condemning land for a railroad cannot be extended to land already devoted by the state to another public use. (Mills on Eminent Domain, sec. 351; *St. Louis R. R. Co.* v. *Blind Institution*, 43 Ill., 303.)

The provisions of the statute, fairly interpreted, simply grant a right of passage—a right to lay and use a track only over the streets or public grounds—leaving such street or grounds in all respects, as far as practicable, subject to all of the uses for which they were used before. No buildings or obstructions other than a simple track can be tolerated without an agreement with the municipality. (Secs. 26, 27 and 28, Miscellaneous Laws, page 530, and authorities above cited.)

By the Court, Lord, C. J.:

This is an action to condemn a certain tract of land, known as the public levee, in the city of Portland, to the use of the plaintiff, a railway limited corporation, for depot purposes; grounds, side tracks, and other purposes.

Among other things, the complaint alleges that it is both necessary and convenient for the plaintiff to have for depot grounds, and for occupation by it for a depot, and for laying its track and side track, and other purposes, those certain premises situated in the city of Portland, etc. (describing the same), and that said premises are public grounds within said city, having been dedicated to the use of the public as a public levee, and are now held by and are under the general control of the city of Portland, the defendant, for use by the general public, as a public levee. That the plaintiff did apply to and request the mayor and common council of said city, they being the authorities of said city, having power to act for it in that behalf, to set aside and designate the said premises for the use of the plaintiff, and for the purposes and uses aforesaid, but that said authorities did wholly fail and refuse to designate said premises for the use of the plaintiff, or to designate any other grounds in said city for said use.

A demurrer to the complaint was sustained, and judgment was given dismissing the complaint, and plaintiff appeals.

For the purposes of this case, the demurrer admits the facts alleged to be true, and the only question presented by this state of facts is, whether the statute in relation to corporations has invested the plaintiff with the power and authority to enter upon and take possession of property held by the defendant, and dedicated to the use of the public, and erect thereon permanent structures for another and different use, although public, than the original use to which it is already dedicated, without the consent of, or any agreement with the local authorities, when the effect of such appropriation must be to extinguish such original use as a public levee, and make the use of the railway corporation exclusive. It can hardly be controverted that the appropriation of this property by the plaintiff for depot grounds, side tracks and other purposes of the corporation, is inconsistent with, and would extinguish its use as a public levee, and the possession of the railroad corporation would be as absolute and exclusive as property taken under the statute from private individuals. (Miscellaneous Laws, pages 530, 531, 532 and 534; Laws of 1878, pages 104 and 105.)

Under these laws the plaintiff has the right to enter upon any lands between the *termini* of its road for the purpose of examining, locating and surveying the line of such road, and to appropriate sixty feet in width for its road, and in addition thereto, to appropriate a sufficient quantity of such lands for the necessary side-tracks, depots and water stations, etc., where the land belongs to private individuals. And it is provided in the event the corporation cannot agree with the owners thereof as to the amount of compensation to be paid for the same, an action may be maintained against the owners to have the same condemned and appropriated to its use. (Section 40 of title three, chapter seven, Miscellaneous Laws.)

But it is contemplated by this statute that it may become necessary and convenient for the corporation, in the location

of its road, to appropriate a public road, street or alley, or public grounds, or some part thereof, and the only grant of power in relation to this subject is to be found in sections 26, 27 and 28, of the statute above cited.

Section twenty-six provides for the appropriation of any part of any public road, street or alley, or public grounds, when within the limits of an incorporated town, by an agreement with the county court upon the terms and conditions upon which the same may be appropriated or used by the corporation, and in case of failure of the parties to agree, such corporation may appropriate so much thereof as may be necessary and convenient in the location and construction of the road. But whenever such highway or public ground is taken by a private corporation by agreement with the local authorities mentioned in section twenty-six, then the corporation may place such gates thereon, and receive such tolls thereat, as may be consented to by such agreement, and none other.

Section twenty-seven provides—and this is the one to which our attention has been particularly directed—that whenever a private corporation is authorized to appropriate any public highway or grounds as mentioned in section twenty-six, if the same be within the limits of any town, whether incorporated or not, such corporation shall locate their road upon such particular road, street or alley, or public grounds, within such town, as the local authorities having charge of the same shall designate, and in case such local authorities shall fail or refuse to make such designation within a reasonable time, when requested, such corporation may make such appropriation without reference thereto.

But the latter clause of section twenty-eight provides that when the same is appropriated, *as in this case*, without such agreement as is provided in section twenty-seven, such corporation shall not place any gate, or other obstruction, on the public highway or grounds appropriated, nor charge or receive any tolls from any person passing over or along the same.

In construing statutes of this character, the authorities are uniform in holding that, " to take property already appropriated to another public use, the act of the legislature must show the intent so to do by clear and express terms, or by necessary implication, leaving no doubt or uncertainty respecting the intent." (Mills on Eminent Domain, section 46, and authorities cited.)

The power conferred must be given in express terms, or by necessary implication, or the corporation will not be permitted to appropriate property already devoted to a public use to its exclusive possession. When the power given can be exercised under certain circumstances, indicated by the statute, independently of the local authorities and without their consent or agreement, the authority to locate the road upon property devoted to another public use must be strictly pursued, and no intendments will be indulged of an exclusive use by the corporation, unless by the direct terms of the grant of power, or by necessary or unmistakable implication, it is manifest that the public use is to be extinguished and the use of the corporation is to be exclusive. Nor will the power be inferred to invade the privileges of the public, and to take property dedicated to a public use, where the uses to which it is sought to be condemned by the corporation, are of such character as to necessarily make the occupation exclusive, and to deprive the public of all benefit or use in the premises, unless the legislative intent to authorize such an interference with the rights of the public are plainly manifested in express terms, and are free from all doubt or uncertainty as to such intent.

No implied supremacy of such particular or exclusive use and occupation by the corporation will be tolerated, or permitted to override and subvert the public use to which the property is already dedicated, upon a mere naked grant of power, and without the direct sanction of the legislature. The reason of the principle is that the grant of power is in derogation of common right, and is not to be extended by

implication, and the statute conferring this power must be strictly pursued.

But while it is true that corporations, authorized by legislative enactment, cannot exercise such power over property already dedicated to a public use without an express grant, the doctrine of the law has not been carried to the extent of holding that no authority can be conferred upon corporations to obtain any rights to use property appropriated to public uses.

" Such a rule," Judge Miller says, " would prevent the extension of railroads in large cities, and arrest improvements of this description, to an extent that would be detrimental to the public interests, as well as to the advancement of facilities for increasing the means of transportation of the products of the country from distant points to the great centers of trade and commerce, where they may be made available in promoting the prosperity of the community, and returning to the producer the avails of his labor." (*In the matter of N. Y. C.*, etc., 77 N. Y., 249.)

There can be no doubt that the public have an interest in extending reasonable facilities to such corporations to carry into effect the purposes of their incorporation, because, in so doing, the convenience, comfort and prosperity of the community is greatly augmented by the increased means of transportation, and in view of these objects, and to enjoy the public benefit to be derived therefrom, our legislature has enacted the provisions of the statute above quoted, and also prescribed the terms and conditions upon which a public road, street or alley, or public grounds, may be appropriated by such corporations for the location and construction of its road, when the same shall be necessary or convenient.

In construing section twenty-six, in connection with the restrictions imposed by section twenty-eight of the statute, in the case of *Douglas County Road Company* v. *Canyonville and Galesville Road Company*, 8 Oregon, 102, the principle of strict construction was applied to the power dele-

gated to corporations to appropriate highways or public grounds. The court say: "The statute contemplates that in the construction of a road by a corporation, it may be sometimes necessary, or convenient, to use a part of a highway, as where it passed through a defile, or where it is difficult to construct a road alongside of the public highway, and in such cases, it is provided that the public road, or so much thereof as may be necessary and convenient, may be used, or in the words of the statute, 'may be appropriated by the corporation.' The word appropriated is not, however, to be understood here in the same sense as in the appropriation of lands belonging to private individuals, where the corporation becomes entitled to the property. By the appropriation of a part of the highway the corporation acquires no right, except to use the public road in common with all others traveling upon it, unless it makes an agreement with the county court, as provided in section twenty-six."

Nor, upon this point, was there any diversity of opinion in the court. Judge Boise, in his dissenting opinion, said: "For the county court has no power to prevent the corporation from using such county road, and their using the same for the purposes of travel would be no public injury, and the rights of the public are protected by the inhibition of the corporation from collecting tolls on such portions of the road as are taken and used on the line of the corporate road, unless the same is allowed to be collected by an agreement with the county court."

In the absence of an agreement with the county court, fixing the terms and conditions upon which the public road may be appropriated by a corporation, the principle laid down by the court was, that the corporation only acquired an easement in the lands held and occupied for a public use, a right of way, which might be enjoyed in common, but without detriment to the public, or materially interfering with the public use to which the lands were devoted. No intendment was allowed, or tolerated, that a corporation without any agreement with

the county court, under the naked power conferred, could, in the exercise of the power delegated, extinguish the public use in the highway, and devote the same to its exclusive use and occupation.

It must be obvious that if the same principle of reasoning is to be applied to the construction of section twenty-seven, when it is sought by a corporation to appropriate a highway or public grounds, within the limits of an incorporated city, without an agreement with the local authorities, it is fatal to the claims of the plaintiff.

In the case under consideration, it is averred that the plaintiff applied to the defendant to set aside and designate the public levee for the use of the plaintiff for depot grounds, laying side tracks, and other purposes, and that the defendant failed and refused to designate said premises, or any other public grounds of said city, for the use of the plaintiff, and it is claimed that by reason thereof, the plaintiff has the authority, under section twenty-seven, to appropriate the levee, and to erect thereon a depot, and such other adjuncts as are necessary and convenient for the purposes of its incorporation.

It cannot be denied that the appropriation of this property for such purposes, must, in the nature of things, utterly destroy the public use, and deprive the public of all benefit and use in the property as a levee, and make the use and occupation of the same by the corporation exclusive as of property taken from private individuals, under the statute. But the latter clause of section twenty-eight provides that when the property mentioned in section twenty-seven is appropriated without such agreement, as in this case, such corporation shall not place any gate or other obstruction on the public highway or grounds appropriated. Here is an express inhibition, in the absence of an agreement with the local authorities, to "place any gate, or other obstruction," upon the grounds appropriated. Why not place any gates or other obstruction upon the highway or public grounds? The answer is, to prevent the public from being barred out, or obstructed

in the use of the highway or public grounds upon which the corporation may locate its road.

The inhibition is designed to protect the public rights, and to prevent the public use in the highway or public grounds appropriated, from being obstructed or subverted. The power to appropriate does not include the right to erect gates or other obstructions, which would deprive the public of the beneficent use and enjoyment of the highway or public grounds, without an agreement with the local authorities. That would be devoting the highway or public grounds to uses expressly inhibited, and utterly inconsistent with the public use.

Now, it cannot be gainsayed, that to permit the plaintiff to erect a depot, side tracks, and all the adjuncts, included in "other purposes," upon this levee, would be to create a permanent obstruction of the public use, and to give the plaintiff the exclusive use and occupation of the premises. Without an agreement, the power of the plaintiff to appropriate the highway or public grounds must be without obstruction to the public rights, or materially interfering with the public use to which the property is already devoted; or, in other words, as Judge Kelly said in respect to highways: "By the appropriation, the corporation acquires no right except to use the public road in common with all other persons traveling upon it." In such case no gates or other obstructions, of whatever character, can be erected to shut out or extinguish the public use. It seems to us, to give the provision under consideration, upon the state of facts presented, the most liberal construction consistent with what may be conceived to be the design of the legislature, nothing more certainly was intended or meant—than to give a right of way over the highway or public grounds appropriated. It was certainly not contemplated, nor do we think it can be inferred by any reasonable implication, as insisted by the plaintiff, that under the circumstances of this case, without any agreement with the local authorities, and in the face of an express inhibition against placing obstructions

upon the grounds appropriated, that the corporation can devote this levee to the purposes claimed, and shut out the public from all benefit in its original use.

We should certainly not be disposed to hold that the corporation would be permitted to obtain any other rights over the highway or public grounds than the right to lay and use its track over the streets or public grounds, leaving such streets or grounds in all respects, as far as practicable, subject to all of the uses for which they were used before.    No permanent obstructions, such as depots, etc., which must necessarily obstruct or extinguish the original public use, can be tolerated without an agreement with the local authorities, as provided by the statute.    Under a grant of the right of way, Mr. Mills says, in his work on Eminent Domain:    "The company, in the location, may lay such number of tracks as are essential to the convenient transaction of business, and for that purpose, may make any necessary alteration in the grade or surface of the highway.    But where there is an entire conversion of the streets, by permanent structures of various kinds, to such uses as virtually block it up for all the purposes of a street, such use cannot be justified, or included under a grant of a right of way.    The street cannot be occupied as a depot yard, for cars to stand in while they are loaded and unloaded, nor can the track on the street be raised on embankments, so that it cannot be used by ordinary vehicles, nor can the street be obstructed by earth, timber or rails, so as to interfere with its use.    The company must for itself provide sufficient ground for depot purposes, and cannot use the public street for such purposes.    That would be devoting the public street to purposes entirely inconsistent with the grant of a mere right of way, which must mean a way at the ordinary grade." (Section 200 and authorities cited in the notes.)

But it is insisted that the local authorities having failed to act upon the application of the plaintiff, or to designate other grounds for the use of the corporation, that the power to appropriate highways or public grounds still remains unim-

paired, and is not to be defeated by the failure or refusal of the local authorities to act—that the want of an agreement with the local authorities as to the property to be appropriated, or the designation by them of other property for the purposes requested, is not the fault of the plaintiff, and cannot therefore operate to prevent the plaintiff from appropriating the property for the purposes claimed.

This view excludes altogether the restrictions imposed under the latter clause of section twenty-eight, and subordinates the public use to the purposes of the corporation, without even showing such an absolute necessity for the use of this particular property, that, without it, the purposes of the corporation would fail, or be wholly defeated. If this inhibition against placing obstructions upon the public property appropriated, can be ignored and set at naught, by devoting the property to uses utterly inconsistent with the public use, and which, in this case, must subvert it, and create an exclusive use in the corporation, then it would seem to us that the requirement of an application to the local authorities to designate such property, or other property, is a useless and unnecessary requirement. The power to appropriate becomes as extensive, if not more so, without the consent of the local authorities as with it.

Under such a construction any public property, no matter to what public use it may be devoted, can be appropriated for depot grounds, engine houses, and other puropses, however inconsistent with the public use, or detrimental to the public convenience, comfort or prosperity. Such a claim implies a supremacy to corporate uses over all other public uses to which the property may have been dedicated, and, carried to its logical results, property appropriated to the highest uses of state, and upon which may be erected permanent structures at vast public expense, must yield to the higher purposes of the corporation, when the same shall be necessary or convenient to the location and construction of its road.

No authority has been cited, nor have we been able to find

any, under a grant of power like this, where the doctrine is maintained. To authorize the taking of property already appropriated to the public use, the grant of power must be in express terms, or by necessary implication, or it does not exist.

In the *St. Louis R. R. Co.* v. *Trustees Ill. Inst. for the Blind*, 43 Ill., 305, under an act much broader in its language than the provision under consideration, the court say: "The language of this enactment is broad and comprehensive, and would literally embrace the right to appropriate any property owned by the State. But failing to grant any property specifically, can it be inferred that it was intended that property owned and already appropriated by the State to permanent and specific purposes, could be taken?" Again: "The language of the act is broad enough to embrace any property of the State necessary to the construction of depots, turn-outs, engine houses, and other buildings necessary for the completion and operation of the road, and yet we apprehend that it would hardly be contended that this grant would embrace all of the grounds and buildings connected with this institution. And yet we are unable to draw the line where the power would cease to appropriate the property." And the court held that the corporation had no power under this enactment to appropriate any portion of the grounds, or property belonging to the State, and used for the purposes of the institution. (See also, *Matter of Boston and Albany R. R. Co.*, 53 N. Y., 575.

It follows from the views expressed, that upon the record presented by this case, the judgment of the court below must be affirmed.

Judgment affirmed.