Chicago, Rock Island and Pacific Railway Co. *et al.*

*v.*

The People *ex rel.* John Dailey, State's Attorney, *et al.*

*Opinion filed October 23, 1906.*

1. Pleading—*defendant is bound by admissions of fact in his answer.* A defendant railroad company which alleges in its answer' to a bill to enjoin enforcement of an ordinance granting certain rights to a railway company in a street, that the land in controversy "is and ever has been a part of Water street as originally laid out," is bound by such allegation, where it does not except to the master's findings in accordance with such allegation nor ask leave to amend its answer.

2. Municipal corporations—*when street extends to center of river.* A street bounded upon one side by a river extends to the center of the river, notwithstanding the plat gives its width in figures.

3. Same—*city cannot grant exclusive use of street to railroad company.* A city has no power to grant to a railroad company the use of a street, or any portion thereof, for the purpose of railroad yards, switch tracks and depot grounds, to the exclusion of the public and adjacent property owners, and an ordinance which purports to do this is void.

4. Same—*a public landing or levee is held by city on same conditions as it holds its streets.* A public landing or levee dedicated to a city is held by it in trust for the public in like manner as it holds the public streets, and it has no power to grant to a railroad company the right to construct railroad yards and depot grounds thereon, to the exclusion of the public from the full enjoyment of the landing or levee according to the purposes of the dedication.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. N. E. Worthington, Judge, presiding.

This cause was brought to this court by appeal from the Appellate Court for the Second District to reverse the judgment of that court affirming the decree of the lower court. The statement of the Appellate Court, which we adopt, fairly sets out the facts, and is substantially as follows:

"This is an appeal from a decree of the circuit court of Peoria county declaring void a certain ordinance passed by the city council of the city of Peoria in November, 1898, and enjoining appellants from exercising any rights or privileges under it. The ordinance gave permission to the Chicago, Rock Island and Pacific Railway Company and the Rock Island and Peoria Railway Company, their successors and assigns, for a period not to exceed fifty years, in consideration of the annual payment of $500, 'to re-arrange and reconstruct their existing tracks, and to construct additional tracks, spurs, sidings and switches in and upon Water street and the public grounds lying between Water street and the Illinois river and between Fayette street produced on the east and the land owned by said companies at the foot of Fulton street produced on the west,' according to plans shown by a plat attached to the ordinance. The ordinance also authorized said companies 'to construct and maintain upon said public grounds, and use for the purpose of a passenger depot, a permanent stone and brick building, with such necessary and convenient sheds, platforms and tracks in connection therewith, as the said companies, their successors and assigns, shall deem necessary.' The ground referred to lies between the front of blocks 1, 2, 3 and 4, in the city of Peoria, and the Illinois river. It is of irregular width, varying from two hundred to two hundred and fifty feet, and is twelve hundred feet long. Said blocks front on Water street, which is a public street and extends in a north-easterly and south-westerly direction along and parallel to the river front. For many years prior to the passage of the ordinance one hundred and ten feet of the space between the river front and the blocks mentioned, and next to said blocks, had been used and traveled as a street. The remainder of the space was, it appears, not used for travel along Water street, but was used as a boat landing or levee, and, as alleged, as a kind of storage or 'dumping ground.' Several years before the passage of the ordinance in question, by permission of the

city, certain railroad tracks were laid in Water street by the appellants upon and along the southerly side of the one hundred and ten feet used for street travel, but these tracks are not involved in this litigation. The bill is filed in the name of the People by the State's attorney, and a number of individuals, some of whom are owners of property fronting on Water street and some of whom are engaged in river traffic as common carriers, join as complainants and allege that their property and business are injured and damaged by the use and occupation of the land in dispute by appellants. It does not directly aver that all the territory within the limits mentioned is Water street. The averments are, that it was held and used and recognized by the city of Peoria 'as a public street and public boat landing, public harbor and public wharf or public levee.'

"The appellants by their answer admit 'that all of said ground lying between the present northerly line of Water street, as indicated by the curbing and the river, was and is a part of Water street;' 'deny that there was any limit to the width of Water street except such as was contained between what is at the present time the north-westerly line of Water street and the river, but its depth was limited between the boundaries aforesaid,' and 'deny that any of the land ever was held by the county commissioners or the county of Peoria or the city of Peoria as and for a boat landing; that such land was, is and ever has been a part of Water street as originally laid out and platted.' The answer further denies that the portion of Water street next to the river has been used exclusively as a boat landing, and denies that there ever has been any limitation to the width of Water street as cared for by the city of Peoria, or that there ever has been any recognition of the rights of the river front as a landing place or levee except by sufferance, or that any use thereof has in any manner changed or tended to change the character of the ground or make it anything but a street owned by the city of Peoria and under the control of the city authorities of

the city of Peoria to the same extent as any and all other streets of said city.

"After replication filed, the cause was referred to the master in chancery to take the testimony and report his conclusions of both law and fact. The master found and reported that the appellants had taken possession of the strip of ground described in the ordinance, had re-arranged and re-constructed their tracks, built new tracks, sidings and switches, 'and are now using said ground as a railroad yard, for switching, unloading, loading and the storing of freight cars.' He further found the ground described in the ordinance is a part of Water street; that 'Water street contains all the ground between the front row of blocks and the river or lake, and was granted to the town of Peoria and dedicated to the county commissioners, who laid out the town for public purposes.' He also finds that all the streets of Peoria were laid out one hundred feet in width except Water street, which was extended to the river, and that 'the increase in. the width of it by the commissioners clearly indicated their intention to make it serve the purpose of a public landing in addition to its ordinary uses as a street; that the effect of the ordinance was to give appellants, without a petition of the owners of more than one-half of the land fronting on the portion of the street sought to be taken, the exclusive use and control of the portion of Water street embraced within its terms for a period of fifty years, and that the city of Peoria had no power to dispose of the use, control and occupancy of any portion of Water street, and the public landing which is a part of the same, as was attempted by the ordinance. He therefore finds, and so reports, that the ordinance is void, and recommends that a judgment of ouster be rendered against appellants.

"Appellants filed objections to the report before the master, who overruled them, and the same objections were filed as exceptions in the circuit court, where they were by the court overruled and the report of the master approved in all

respects except as to the recommendation that a judgment of ouster be entered. The court found that the findings of fact reported by the master were sustained by the pleadings and proofs, and decreed the ordinance to be illegal and void; that appellants acquired no legal rights by virtue of it, and that the exercise of their pretended rights under it created a public nuisance and a purpresture upon the premises described and granted in and by said ordinance, and perpetually enjoined the exercise of any rights or powers under or by virtue of it."

Stevens & Horton, for appellants:

Where the fee of ground is in the city, abutting property owners cannot prevent, by injunction, the use of streets by railroad companies when empowered to do so by action of the city council. The remedy is at law, for damages. *Stack* v. *St. Louis,* 85 Ill. 377; *Bridge Railway Co.* v. *Johnson,* 188 id. 472; *Sanitary District* v. *Adam,* 179 id. 406; *Railway Co.* v. *Johnson,* 204 id. 488; *Brooklyn* v. *Smith,* 104 id. 429.

A levee, for wharfage purposes, is not a street nor to be treated as such, in the consideration of the court. *Jacksonville* v. *Railway Co.* 67 Ill. 542; *Lake View* v. *Tate,* 130 id. 252.

Courts of equity will not entertain a bill to restrain the laying of tracks in a street under a grant by the city council when the fee is in the city. *Stetson* v. *Railroad Co.* 75 Ill. 74; *Tibbetts* v. *Railway Co.* 153 id. 147; *Zinc Co.* v. *LaSalle,* 117 id. 411; *Corcoran* v. *Railroad Co.* 149 id. 291; *Railway Co.* v. *Railway Co.* 156 id. 255; *Doane* v. *Railroad Co.* 165 id. 510; *Phelps* v. *Railroad Co.* 166 id. 131.

Where the legislature grants the power to a municipal corporation, an ordinance passed in pursuance of the power cannot be held invalid by a court as being unreasonable. *Lake View* v. *Tate,* 130 Ill. 247; *Hawes* v. *Chicago,* 158 id. 653; *Wice* v. *Railway Co.* 193 id. 351; *Railroad Co.* v. *Carlinville,* 200 id. 314.

· Robert Scholes, State's Attorney, Sheen & Miller, and Henry Mansfield, for appellees:

The statute declares it to be a public nuisance to obstruct or encroach upon public highways, private ways, streets, alleys, commons, landing places and way to burying places. Hurd's Stat. 1903, par. 221, p. 657.

The statute empowers a city council to lease a public landing or levee only for the purpose of erecting manufactories, warehouses or grain elevators, but not for a period to exceed twenty-five years. Hurd's Stat. 1903, par. 247, p. 326.

The constitution prohibits a donation by a city to a railroad. *Fulton* v. *Northern Illinois College,* 158 Ill. 335.

A municipality has no power to grant exclusive use of a street. *Telephone Co.* v. *Telephone Co.* 100 Ill. App. 57; *Snyder* v. *Mt. Pulaski,* 176 Ill. 403; *People* v. *Harris,* 203 id. 272; *Ligare* v. *Chicago,* 139 id. 62; *Smith* v. *McDowell,* 148 id. 63; *Field* v. *Barling,* 149 id. 556.

Any fair, reasonable doubt concerning the existence of power is resolved against the corporation and the power denied. *Emmons* v. *Lewiston,* 132 Ill. 384.

All acts in excess of granted powers are void. *Jacksonville* v. *Allen,* 25 Ill. App. 56.

A city cannot revoke a valid contract made with a railway concerning the use of a street. *People* v. *Railway Co.* 118 Ill. 114; *London Mills* v. *White,* 208 id. 298.

A permanent structure in a public street is a purpresture and a nuisance even if licensed by a city. *Smith* v. *McDowell,* 148 Ill. 67; *People* v. *St. Louis,* 5 Gilm. 351; *Railway Co.* v. *Chicago,* 96 Ill. 626.

A court of equity may enjoin an obstruction upon a public street. *Railway Co.* v. *Chicago,* 76 Ill. 620; *Barrett* v. *Cemetery Ass.* 159 id. 391; *Doane* v. *Railway Co.* 165 id. 521; *Jacksonville* v. *Railway Co.* 67 id. 541.

A city has no right to obstruct a street or deprive adjacent property owners of riparian rights. *Ligare* v. *Chicago,*

139 Ill. 46; *Revell* v. *People,* 177 id. 484; *Dock Co.* v. *Garrity,* 115 id. 155; *Smith* v. *McDowell,* 148 id. 51.

A city may improve a street, park or other property held in public trust, but cannot grant an exclusive use of it to private purposes. *Smith* v. *McDowell,* 148 Ill. 51; *Chicago* v. *Pooley,* 112 Ill. App. 343; *Field* v. *Barling,* 149 Ill. 566; *Ligare* v. *Chicago,* 139 id. 46; *Barrows* v. *Sycamore,* 150 id. 588; *Corcoran* v. *Railway Co.* 149 id. 295.

The storing of cars and building of permanent structures are inconsistent with public uses. *Railway Co.* v. *Chicago,* 151 Ill. 348; *Ligare* v. *Chicago,* 139 id. 64.

An ordinance granting the right to lay railroad tracks in a public street, not petitioned for by more than half the owners of the frontage of the street, is void. *McGann* v. *People,* 194 Ill. 535.

Mr. Justice Carter delivered the opinion of the court:

The contention of appellants that the State's attorney is a mere nominal party to this proceeding is not supported by the record. They filed a demurrer to the original bill in the trial court raising this point and on a hearing the court overruled the demurrer. There is nothing before us to justify appellants' claim that the State's attorney is lending the use of his name and official character at the request of outside parties. Holding, as we do, that the State's attorney is the actual, and not a mere nominal, party to the suit, we do not find it necessary to discuss the question whether or not private individuals joined with him could alone maintain this action.

Appellants very earnestly insist that the Appellate Court was wrong in holding that they were bound by their answer, wherein they aver that the land in controversy is, and ever has been, a part of Water street as originally laid out and platted, "or that there has ever been any recognition of the rights of the river front as a landing place or levee except by sufferance." They made no objection or exception to the

finding of the master that said premises were a part of said street, nor did they by their assignment of errors in any way raise this question. If they had intended to claim that the premises were not a part of the street, they certainly ignored in their answer the familiar rule of pleading that a defendant is bound "to apprise the plaintiff, by his answer, of the nature of the case he intends to set up,—and that in a clear and unambiguous manner,—and that a defendant cannot avail himself of any matter of defense which is not stated in his answer, even though it should appear in his evidence." (1 Daniell's Ch. Pr.—6th Am. ed.—712; *Johnson* v. *Johnson,* 114 Ill. 611; *Home Ins. Co.* v. *Myer,* 93 id. 271; *Crone* v. *Crone,* 180 id. 599; *Jewett* v. *Sweet,* 178 id. 96; *Dorman* v. *Dorman,* 187 id. 154; *Kehm* v. *Mott,* 187 id. 519; *Mehan* v. *Mehan,* 203 id. 180; *Millard* v. *Millard,* 221 id. 86; 1 Ency. of Pl. & Pr. p. 927.) Had they desired to make the defense which they are now raising, they should have excepted to the master's finding on this point and asked leave to amend their answer Not having done this, under all well considered authorities they are concluded from insisting that the premises in controversy are not a part of Water street.

Aside, however, from the admissions in the answer, the evidence in this case tends very strongly to show that Water street extended to the river. "Exhibit B" shows Water street bounded on the south-east by Lake Peoria, as the Illinois river is called at that point. The certificate of the surveyor who made this plat May 27, 1834, recites: "Water street contains all the ground between the front row of blocks and the river or lake and is of various widths, but every......over one hundred feet." Supplying the word evidently omitted, the last clause would read, "is of various widths, but every*where* over one hundred feet." The plat of the town made in 1826, which is shown as "Exhibit C," gives Water street as bounded by the Illinois river. It is true, the certificate states that Water street is one hundred and ten feet in width, but the decisions in this State hold that when a

street is bounded on one side by a river, even though the plat gives its width in actual figures, it extends to the center of the river.   *Godfrey* v. *City of Alton,* 12 Ill. 29; *Village of Brooklyn* v. *Smith,* 104 id. 429; *Owen* v. *Village of Brookport,* 208 id. 35; *People* v. *City of Rock Island,* 215 id. 488.

If the premises in dispute are a part of Water street, then the city council had no right to authorize any part of this street to be taken for the uses and purposes set forth in this ordinance, "except upon the petition of the owners of the land representing more than one-half of the frontage of the street."   Appellants make no claim that there is such a petition, nor do they seriously insist that if this be a street the city could by ordinance authorize them to use it in the manner set forth without such petition.   They admit the rule repeatedly asserted by this court, that the streets of a city are dedicated to the city for public use, and while subject to the control and management of the city authorities· they cannot convey or encumber them so long as they are public streets, but it is their duty to hold them in trust for public uses only.   They cannot grant in them any easement or right not of a public nature, and the entire street must be ever maintained for public use, and no corporation or individual can have granted to it for its exclusive private use any portion of such public property.   (*Hibbard & Co.* v. *City of Chicago,* 173 Ill. 91; *Smith* v. *McDowell,* 148 id. 51; *Field* v. *Barling,* 149 id. 556; *Snyder* v. *City of Mt. Pulaski,* 176 id. 397; *Pennsylvania Co.* v. *City of Chicago,* 181 id. 289; *Chicago Dock Co.* v. *Garrity,* 115 id. 155.)   It is conclusively shown by this record that appellants are using a portion of the disputed premises in such a manner as to exclude entirely any public use.   As was said in the opinion of the Appellate Court: "The testimony sustains the master's finding that appellants had taken possession of the land and built a number of tracks, sidings and switches, 'and are now using said strip of ground as a railroad yard for switching, loading and unloading and the storing of freight cars.'   Such uses

of a street, and the further right to construct a brick and stone depot therein and other structures, are inconsistent with public enjoyment and a deprivation of the right of the public to the use of the street. Of course, a city has a right, within proper restrictions, to authorize a railroad company to lay tracks in a public street and operate cars thereon, but the right so to use the street is to be enjoyed in connection with, and not to the exclusion of, the public. The power to grant the right to a railroad company to use a street does not carry with it the power to authorize the company to obstruct the street so as to deprive the public and adjacent property owners of its use.—*Ligare* v. *City of Chicago*, 139 Ill. 46."

We would be justified on this record in affirming the decision of the Appellate Court without consideration of the other points urged by appellants. In their brief they substantially say: We admit all this, but as the case was not tried on the theory that this property was a street we ought not to be bound by our answer. They urge that the bill of complaint claimed it was a part of a public levee or boat landing, and that much of the evidence tended to uphold this claim. The record *does* disclose that many witnesses on the trial of the case called the land a levee or public landing, and that counsel on both sides, in their examination of witnesses, did the same thing. The ordinance of the city of Peoria passed in April, 1855, stating "that a public ground in front of blocks 1, 2, 3 and 4, in the city of Peoria, and at the termination of every street and alley from the river and lake, are hereby declared to be public landings and landing places in and for the city of Peoria," indicates that at that time the city authorities thought that there was some land between the river and the street which might properly be classed as a public landing. The ordinances of October, 1869, and September, 1884, made a part of this record, tend to show the same thing. But if Water street as originally laid out was bounded by the Illinois river, under the law it would extend to the center of the river, and the mere fact that the portion

of the street at the water's edge has been known and called, ever since the street was platted, a public landing or levee, would not necessarily preclude it being still held as a part of Water street. If we consider Water street to be only one hundred and ten feet wide and the balance of the land to the river a public landing or levee, then is the ordinance in question a valid and binding one?

The word "levee" in this record means the same thing as a public landing place. That word as used in the west and south in this country means a public landing place. (Century Dict.; *City of St. Paul* v. *Chicago, Milwaukee and St. Paul Railway Co.* 63 Minn. 330.) "A landing or levee is a space adjacent to navigable water where vessels may approach and land to unload and receive passengers and freight, and where articles of freight may be left for loading on the vessel or after they have been unloaded until they can be taken away." (Farnham on Water and Water Rights, sec. 145.) A public landing is dedicated to the public use and is held in trust for the public, the same as a street. It cannot be devoted to any use inconsistent with the use of the public. It was held in *City of St. Paul* v. *Chicago, Milwaukee and St. Paul Railway Co. supra,* that to give a public levee, or any part of it, to a railway company as a permanent site for its freight house, without reference to the traffic by way of transfer of passengers and freight to and from vessels navigating the adjacent river or other navigable water, would consitute a diversion of the property to a use foreign to and inconsistent with that for which the levee was dedicated. The Supreme Court of California, in discussing a similar question in *City of Napa* v. *Howland,* 87 Cal. 84, say (p. 87) : "It is said that the evidence does not support the finding of dedication 'as a public levee and for public street purposes,' because it shows a dedication, if any, for a public landing. It matters but little what name is given to the place, so long as the fact appears that it was dedicated for a public use. 'A landing is a bank or wharf to or from which persons may go

to or from some vessel in the contiguous water.' The word 'levee,' as applied to portions of the public highways bordering on navigable streams and sloughs in the interior cities and towns of this State, has the same meaning as landing." (See, also, *Oregon Railway Co.* v. *City of Portland,* 9 Ore. 231.) A public landing is for the benefit of the public generally, and there must be means of access to it. This use is always subject to public regulation, and the right to use a landing does not include the right to make such use of it as will deprive others of a like use. (Farnham on Water and Water Rights, sec. 145a.) In *Gardiner* v. *Tisdale,* 2 Wis. 188, it was said: "The term 'public landing,' as used in this case, conveys to our mind the idea of a piece of ground on the bank or margin of Rock river provided for the open and common use of all persons in the debarkation of themselves or their goods, but not a place to be permanently encumbered with piles of lumber or other merchandise or goods, any more than a public highway or street, because the benefits and accommodation to the public which are intended to be conveyed would be greatly affected, if not wholly destroyed, by any such permanent encumbrance." When the county commissioners of Peoria county, in May, 1834, platted the town of Peoria, they stated ("Exhibit B") : "All the streets and alleys and the public square, as therein laid and exhibited, we hereby grant for public purpose, to be and remain forever the property of said town according to said statute." The statute referred to provided that when a town was platted, the "land intended to be for streets, alleys, ways, commons or other public uses in any town or city or addition thereto shall be held in the corporate name thereof, in trust to and for the uses and purposes set forth and expressed or intended." (Laws of Ill. 1833, p. 600.) If the public authorities dedicated this as a public landing, it was certainly never the intention that any part of it should be used exclusively for purposes which do not in any way pertain to river navigation. Not only does the ordinance authorize appel-

lants to build costly and permanent buildings upon part of the disputed premises, but they have already constructed railroad tracks therein so as to take up at least seventy-five feet of this public landing that was never before used for railroad purposes. The evidence shows that during high water almost every year practically all of the public landing, except that occupied by the railroad tracks, is submerged.

Whether the disputed premises be held a part of a public landing or part of a public street matters little, if the ordinance in question proposes to allow them to be used for purposes foreign to that for which they were dedicated. There is no power in a municipality to sell or grant ground held in trust for the public and to exclude the public therefrom. The ordinance granted the authorities the right to erect buildings on public property of such nature that their use must necessarily be largely private. On the record before us we are inclined to hold that the use to which the premises in question are being and will be put under the ordinance in question is more foreign to and more inconsistent with the proper use of a public landing or levee than with the proper use of a public street. It is claimed that a portion of the disputed premises has been paved and is in a better sanitary condition than formerly; that the streets which end at the public landing, where they cross the railroad right of way, are better constructed, and therefore safer for the public, than before. It can hardly be seriously contended, with the great number of additional tracks that have been constructed under this ordinance, occupied by cars being switched back and forth over these crossings, that people can approach this public landing with as little danger as they could formerly. The new tracks laid have caused additional switching and more traffic over the streets. Every additional track and crossing at grade necessarily adds to the difficulty and danger of approach to this public landing. We are aware that there might be a proper use of a public street that might not be a proper use for a public landing, and that what might be a proper

use of a public landing would constitute a misuser of a street. If Water street be only one hundred and ten feet in width, as contended by appellants, then the disputed premises must be a part of the public landing, and the purposes for which they are being used, and would be used under the provisions of this ordinance, are not in any way allied to the use of these premises as a public landing, but, on the contrary, are solely for the use of the railroad companies for their freight and passenger traffic, not appertaining to the passenger or freight traffic on the Illinois river.

· As we have heretofore stated, we would be justified on this record in holding that appellants were bound by their answer, and that the premises in question are a part of Water street. As we have before shown, the evidence in this record tends very strongly to uphold these admissions. If the disputed premises are held to be a part of Water street, the ordinance is invalid because it is not based upon the petition of the owners of land representing more than one-half of the frontage of the street. In either event, we conclude that the uses and purposes, as shown by this record, that are being made or can be made of a portion, at least, of the disputed premises under the ordinance, whether said premises be held to be a public street or a public landing, are of such a nature that the ordinance grants to certain parties the exclusive use of land which belongs to and ought to be open and free to the enjoyment of the public, and that such uses therefore constituted a purpresture and the city council of Peoria had no authority to pass the ordinance in question. It must therefore be held void and of no effect.

We find no reversible error in the record. The judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*

Farmer and Vickers, JJ., having heard this case in the Appellate Court, took no part in its decision here.